### MILLER VS. THE CITY OF MILWAUKEE.

The corporate authorities of the city of Milwaukee, by virtue of the general powers possessed by municipal corporations at the common law (which powers the charter of the city declared they should possess), were authorized to contract for the building of a breakwater designed to protect certain streets in said city from being destroyed by the waters of Lake Michigan.

Where it appeared from the complaint that the plaintiff contracted with the city to build such a breakwater "in front of *and chargeable to*" certain lots in said city, for a specified price to be paid in street commissioners' certificates, and that the city was not authorized by law to have such work done at the expense of the owners of such lots: *Held*, on demurrer, that the complaint showed a good cause of action, against the city.

APPEAL from the County Court for *Milwaukee* County. Section 1 of chapter 1 of the charter of the city of *Milwaukee*, Laws of 1852, chapter 56, provides that the corporation shall have the general powers possessed by municipal corporations at the common law. Section 16 of chapter 117 of the Private and Local Laws of 1858, approved March 27th of that year, provides that the street commissioners of said city shall inquire into and determine the necessity of any work to be done by the city, and on their recommendation the common council may authorize the comptroller to advertise for proposals and to let the contract for such work, which shall be subject to the approval of the street commissioners. The 17th section of the same chapter provides that " all work    *    *    chargeable to the several ward funds or to the city fund    *    *    shall be let by con-tract to the lowest bidder, with ample notice of the time and place, &c. All accounts for such work    *    *    shall, before being allowed by the common council, be audited by the comptroller," &c. Section 53 vests the powers of the corporation of said city in the board of aldermen and the board of councillors ; which together, by section 48, constitute

the common council. Section 47 provides that any ordinance *or resolution* which shall have been passed by the common council, shall be in force unless disapproved by the mayor, &c.

This action, which was commenced August 31, 1860, was for the value of work done by the plaintiff in constructing a breakwater for said city. The complaint alleges that in September, 1858, the street commissioners of said city recommended to the mayor and common council the construction of a breakwater in the center of Beach street, in front of lots 4 and 6 and the south half of lot 3 in block 85 in said city. Such breakwater was necessary in order to preserve said Beach street and the eastern portions of Detroit and Huron streets from being destroyed by the action of the waters of Lake Michigan. A resolution was accordingly passed by the board of councillors and concurred in by the board of aldermen, adopting the recommendation of the street commissioners, and ordering that such breakwater should be constructed according to law. There was at that time no law authorizing said city to cause said breakwater to be constructed at the expense of said lots, but the board of councillors and aldermen, and the street commissioners expected that a legislative act would soon be passed for that purpose. On the 9th of October, 1858, the comptroller of said city gave due notice to the owners of said lots that they should construct said breakwater within twenty-two days thereafter, or the street commissioners of said city would cause the same to be constructed at the expense of said lots. The owners of the lots did not construct said breakwater; and on the 1st of November, 1858, the comptroller duly advertised for sealed proposals for said work. The plaintiff's sealed proposal therefor, which was duly filed and was the lowest proposal, was accepted; and on the 13th of the same month, said city, by its street commissioners, entered into the contract, which was duly countersigned by the comptroller, whereby the plaintiff agreed to build a breakwater " on the center of Beach street, &c., in front of *and chargeable to* the south half of lot 3 and all of lots 4 and 6, block 85, for seven dollars per lineal foot," &c. Said contract also provided, among

June Term,
1861.

MILLER
v.
CITY OF MIL-
WAUKEE.

other things, that when said work should be completed according to the plans and specifications of the city surveyor, and his certificate thereof, specifying the kind and amount of work done, should be filed with said street commissioners, &c., then the city should pay for the work *in street commissioners' certificates.* The plaintiff performed the work to the satisfaction of the street commissioners, and it amounted, at the contract rates, to $1066.89, and was in fact worth that sum. No law authorizing the city to have said work done at the expense of said lots was ever in fact passed. The city authorities, though requested to provide for the payment of the plaintiff's claim, refused or neglected to do so.

A demurrer to the complaint as not stating facts sufficient to constitute a cause of action, was overruled. From this decision the defendant appealed.

*J. La Due,* for appellant :

A corporation is the creature of the law, deriving its powers from express grant of the legislature, and those who deal with it must, at their peril, take notice of the extent of such powers. 2 Kent's Com., 298 ; *Bradley vs. N. Y. & N. H. R. R. Co.,* 21 Conn., 294 ; *Perrine vs. Chesapeake & Del. Canal Co.,* 9 How. (U. S.), 172. The contract with the plaintiff was invalid because the city had no power to make a contract *for the purposes* for which that with the plaintiff was made. *Brady vs. The City of N. Y.,* 16 How., 432 ; *Same Case* on appeal, 20 N. Y. (6 Smith), 312 ; *Farmer's L. & T. Co. vs. Carroll,* 5 Barb., 649 ; 13 id., 567 ; 4 Sandf., 221.

*Smith & Salomon,* for respondent, to show that the city of Milwaukee had the power to construct the breakwater mentioned in the complaint, referred to the following provisions of its charter (Laws of 1852, chap. 56): The first section of chapter 1, which confers upon it the general powers possessed by a municipal corporation at common law ; section 3 of chap. 4, which gave the common council the management and control of (and therefore the right to preserve) all the property of the city, under which, counsel contended, the public streets were included so far as the public easement in them was concerned ; section 3 of chap. 7, which gives the street commissioners the power to order a contract

for repairing streets, to which, the counsel said, the power of preserving from destruction was incident. 2. Public or private corporations are liable on an implied promise where work has been done for their benefit which they accept and have the benefit of, although no valid contract for such work was originally made. *Brady vs. The Mayor, &c.*, 1 Barb. (S. C.), 584; *Bulkley vs. The Derby Fish. Co.*, 2 Conn., 252; *Stone vs. Berkshire Con. Soc.*, 14 Vt., 86; *Sheldon vs. Fairfax*, 21 Vt., 102; *Gassett vs. Andover*, id., 343; *Thayer vs. Boston*, 19 Pick., 511. The fact that the charter of the appellant prescribes that all work chargeable to the city or ward funds should be let by contract to the lowest bidder, will not prevent a recovery on a *quantum meruit*, where there was no want of good faith in entering into the contract. *Brady vs. The City of N. Y.*, 20 N. Y., 312, 319. 3. But the plaintiff is entitled to recover on the contract in this case. So far as the contract fixes the work and the price, it is within the authority of the city; the mode of letting was also according to law. Since the city has no power to pay "in street commissioners' certificates," it should be held bound to pay in money instead, and those words should be rejected as mere surplusage.

*By the Court*, DIXON, C. J. The general powers possessed by municipal corporations at common law, are words of very general import, and an attempt to point out all the acts which they might be held to authorize would be a work of considerable labor. The defendant's act of incorporation declares that it shall have " the general powers possessed by municipal corporations at common law," and in addition thereto the powers thereinafter specifically granted. Chapter 56, Laws of 1852, section 1. The specific grants of power are very numerous and full, embracing nearly all the usual subjects of municipal regulation. Wherever these occur and the manner of their exercise is prescribed, they must of course be governed by the provisions of the act. But it must be presumed from the general words above quoted, that the legislature considered that there were some powers pertaining to such corporations and which the defendant ought necessarily to possess, which were not included in the specific grants,

*June Term, 1861.*

MILLER
v.
CITY OF MILWAUKEE.

December 30

and which were omitted either by accident or because it was deemed impracticable specially to regulate and define them by statute. It is very probable the latter was the true reason, but which is immaterial here. We are not, however, required to determine the application of these words in all cases, or accurately to define the powers conferred by them, which would involve an extended examination of the law of municipal corporations. We are only to dispose of the case in hand, and in doing so to decide, with reference to general principles, whether it was competent for the city authorities to undertake the improvement in question. The act of incorporation is silent upon the subject of improvements of that nature, and at the time of the passage of the resolution by the boards of councillors and aldermen, and of the letting of the contract and performance of the labor, there was no statute specially authorizing them to be made either under the direction of the councillors and aldermen or of the street commissioners. If the authority existed, therefore, it was by virtue of this general grant. We are of opinion that the councillors and aldermen possessed the power, and that it was rightfully exercised. Municipal corporations are instituted for the advancement and regulation of trade, the local administration of justice and the better government of their particular vicinities. For these purposes they are by the common law invested with the power of making ordinances and by-laws. Willcock on Mun. Corp., 16 (12 Law Library, 10). They may also elect, govern and amove their members, and regulate their franchises and property. Idem, 298 (12 Law Library, 164). They possess power to lay out, open and repair streets and highways, to establish companies to protect the property of the citizens from destruction by fire, and to levy taxes to defray the expense. This power is expressly given to the defendant by its organic act. Underlying these and founded upon presumed general consent, because of far more public and private importance, though, owing to the nature of the emergency, not proper perhaps to be anticipated by any special statutory rules, would seem to be the power of self-protection in the extraordinary case of a city whose foundations are threatened with destruction by

June Term,
1861.

Miller
v.
City of Mil-
waukee.

the waters of a lake. If the making and repairing of the streets and the protection of the shops and dwellings of the citizens are matters of municipal concern for which the authorities are always authorized and required to provide, it would be very singular if they should be denied the means of self-preservation from such a cause, which, unless stayed, would result in the partial, perhaps total, disappointment of the purposes for which the corporation was created. If it is worth while to open and improve a street, to rescue it, when practicable, from utter destruction is of much greater consequence ; and if it is proper to protect buildings, the preservation of the soil on which they stand is much more an object of care. We are of opinion, therefore, under the circumstances set forth in the complaint, that the boards of aldermen and councillors were, upon general principles of the common law, authorized to direct the construction of the breakwater for the defense and protection of the street, and that the contract entered into in pursuance of their directions was binding upon the city at large.

Section 1 of chapter 10 of the charter provides that all work for the city, or either of the wards, shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting such contract. This provision was fully complied with, and the price being chargeable to the general fund, it follows that the stipulation in the contract that the plaintiff was to receive his pay in street commissioners' certificates, was wholly unauthorized. The commissioners had no right to insert it under the authority given them, and it must therefore be rejected.

We have not overlooked the argument to be drawn from the act of March 31, 1860 (Laws of 1860, chap. 272), that the legislature assumed that special authority was necessary in order to enable the city to provide protections and defenses of this kind. Such arguments, though always entitled to consideration, are never conclusive. But we do not think that the act is open to such assumption. The work could only be carried on at the expense of the city at large. This rule of taxation was deemed unfair and not in accordance with the general spirit of the charter, and the act was

undoubtedly passed for the purpose of changing it, and mak ing the work chargeable to the adjacent lots.

We fully acquiesce, therefore, in the decision of the court below, and the order overruling the demurrer to the complaint is affirmed, with costs, and the cause remanded for further proceedings according to law.

[NOTE—Chapter 272 of the General Laws of 1860, referred to in the above opinion, is entitled "An act to authorize the common council of the city of Milwaukee to construct a breakwater in the third ward of said city." The breakwater authorized by the act was to be constructed along the lake shore fronting on Beach street from Detroit to Pier street; and the expense of its construction was required to be levied on the adjacent lots.—REP.]