June Term,
1862.

BUTLER VS. THE CITY OF MILWAUKEE.

BUTLER
v.
CITY OF MIL-
WAUKEE.

The city of Milwaukee, (upon which is conferred by its charter, "the general powers possessed by municipal corporations at common law"), has no power to employ counsel to aid in criminal prosecutions instituted on behalf of the state against persons who had lately been officers of the city, for crimes committed in the course of or under color of the discharge of their official duties, to the pecuniary damage of the city; and after such aid has been rendered by counsel in pursuance of such employment, no action will lie against the city to recover compensation therefor.

APPEAL from the County Court for *Milwaukee* County.

This was an action to recover the value of services rendered by the plaintiff as an attorney at law, at the request of the city of Milwaukee, in the prosecution of divers criminal proceedings against one Lynch and others who had lately been officers of the city, for divers misconducts in office; and for services rendered by the plaintiff, upon like request, to a committee appointed by the common council of the city to investigate its affairs in connection with the acts of divers of its officers and agents. The complaint alleged the value of the plaintiff's services to have been $3000—of which the city had paid $500—and demanded judgment for the balance.—The answer alleged that the services mentioned in the complaint were performed by the plaintiff in the prosecution of certain criminal suits in which the state of Wisconsin was the plaintiff; that the city of Milwaukee had no lawful power to employ the plaintiff to perform said services or to pay him therefor; that the plaintiff had not rendered any of said services at the request of said city, and that said services were of no value.—On the trial, the plaintiff, after proving the performance of the alleged services and their value, and that the common council of the city had, by resolution, directed a committee of investigation to employ him to aid in the prosecutions mentioned in the complaint, and had subsequently appropriated and paid to him $500, "to apply on account for services" in said prosecutions, and had subsequently notified him and other attorneys who had been retained in business of the city, that no allowance would be made for any legal services thereafter rendered for the city

June Term, 1862.

BUTLER
v.
CITY OF MILWAUKEE.

by any person, unless retained by the city attorney with the consent of the mayor, called H. L. Page, late mayor of said city, who had acted upon said committee of investigation, and asked him whether or not said committee employed the plaintiff pursuant to said resolution. The question was objected to, and the objection sustained. The plaintiff offered to prove by the witness, and other testimony, that he was retained by a resolution of the common council, to prosecute and aid in prosecuting, and that he did thereupon prosecute and aid in prosecuting, divers criminal prosecutions against Lynch, Gardiner and others, late officers of the city, for divers crimes by them committed in the course and under color of the discharge of their official duties, against the rights and interests of the city and to its pecuniary damage, and that the common council subsequently recognized such services by part payment therefor, and by the discharge of the plaintiff from his retainer after such services had been performed under it; and in connection with the offer renewed the question to the witness, whether the plaintiff was retained by that investigating committee under authority of the resolution above referred to. To this question and offer of proof the defendant objected, but waived any objection to the form in which the question was put. The court sustained the objection on the ground that the defendant had no corporate power or authority to retain or employ the plaintiff to render the services which it was proposed to prove had been rendered, and that proof of an actual employment of the plaintiff to render the alleged services, although followed by proof that the services were rendered pursuant thereto, and that the city had recognized such employment by part payment for said services, and by discharging the plaintiff from such employment, would in no event entitle the plaintiff to recover. To this ruling the plaintiff excepted. Judgment of nonsuit.

*J. P. C. Cottrill*, for appellant:

The charter of the city of Milwaukee provides that the city " shall have the general powers possessed by municipal corporations at common law," as well as certain other powers specifically granted. In this general grant is necessarily in-

cluded the power to make the contract in question. The
inquiry is not whether it was absolutely indispensable that the
particular contract entered into should be made, but whether
it was reasonable or proper for the city, under all the circum-
stances, to proceed in the way it has done, in preference to
some other way.   The case of *Miller vs. The City of Milwau-
kee*, 14 Wis., 643, decides that the city, in certain emergencies,
may lawfully contract for work not in terms authorized by
the charter.   Who is to be the judge of the emergency in
any given case?   We think the city and not the courts,
when the question of liability is presented, as in the case at
bar.   No one could safely contract with the city, if, after the
work had been done, it could repudiate the contract and take
the chance of a decision in its favor by the courts on the
question whether the emergency was, in fact, such a one as
would authorize the making of the contract.   Nor could any
serious evil result from the rule contended for.   The resolu-
tions and proceedings of the common council are published,
and if any unauthorized measures are adopted, the state or
any other tax payer may interfere by suit, and thus arrest
them at the outset before any innocent party has incurred
expenditure or performed work under a contract which the
council was not authorized to make; and if no such inter-
ference is had, and the person employed performs the work
contracted for, and the city reaps the benefit of it, we think
it too late for the city to set up that the supposed emergency
was not in fact so urgent as to authorize the making of the
contract.   We think the city in such a case must be he held
strictly to the contract which is made.   *Thayer vs. Boston*, 19
Pick., 511; *Barry vs. Merchants' Ex. Co.*, 1 Sandf. Ch. R., 280;
*Noyes vs. Rut. & Bur. R. R.*, 27 Vt., 110; *Sheldon vs. Fair-
fax*, 21 id., 102; *Gassett vs. Andover*, id., 343.

2.   It is insisted, that under the circumstances of this
case, the city is liable on the contract sued on, though the
making of it originally was *ultra vires*.   The contract has
been fully performed by the appellant; the city has received
the full benefit of it; both parties acted in good faith in en-
tering upon it originally; no interference was had during
the progress of the work by any tax payer or by the state,

and it is now impossible to put the parties *in statu quo*. The true rule upon this subject, as well as the true method of its application, has been laid down in the case of *Bissell vs. Mich. S. and N. Ind. R. R. Co.*, 22 N. Y., 258, viz: that corporations, like natural persons, have capacity to do wrong; that they may in their contracts and dealings break over the restraints imposed upon them by their charter, and when they do so, their exemption from liability cannot be claimed on the mere ground that they have no attribute which renders it possible for them thus to act; and that though they have no right to violate their charter, they have *capacity* to do so, and to be bound by their acts, when a repudiation of them would result in manifest wrong to innocent parties. See *Steam Navigation Co. vs. Weed*, 17 Barb., 378 ; *Silver Lake Bank vs. North*, 4 Johns. Ch., 370 ; *State of Indiana vs Woram*, 6 Hill, 37 ; *Moss vs. Lead Mining Co.*, 5 Hill, 137 ; *Chester Glass Co. vs. Dewey*, 16 Mass., 102; *Steamboat Co. vs. McCutcheon*, 13 Penn. St., 13 ; *Palmer vs. Lawrence*, 3 Sandf. (S. C.), 170; *Sacket's Harbor Bank vs. Lewis Co. Bank*, 11 Barb., 213 ; *Bank of Genesee vs. Patchin Bank*, 3 Kern., 309 ; *Parker vs. Boston & Maine R. R.*, 3 Cush., 107 ; *Alleghany City vs. McClurkan & Co.*, 14 Penn. State, 81 ; *Rutland & Burlington R. R. Co. vs. Proctor*, 29 Vt. 93.

*J. La Due* for respondent.

The contract entered into by the common council, or any of the officers or agents of the city, with the appellant, (if any was made,) was void for want of power on the part of the respondent to make it. Wilcox on Corp., p. 164, sec. 2; 2 Kent's Com., 298 ; *Head et al. vs. The Prov. Ins. Co.*, 2 Cranch, 127 ; 4 Wheat., 636 ; 4 Pet., 152 ; 3 Coms., 430 ; 24 Barb. (S. C.), 226 ; 2 Denio 110; 1 id., 510 ; 3 Sandf., 271 ; 6 Hill, 244. The contract being void for want of power, neither the retaining of the appellant, nor the payment to him of any sum on account of his services, could bind the city. *Hodges vs. The City of Buffalo*, 2 Denio, 110 ; *Brady vs. The City of N. Y.*, 16 How. P. R., 432 ; 20 N. Y., 312. This view of the case imposes no hardship on the appellant, for being an eminent lawyer, he is particularly bound by

that rule which presumes every man to know the law. 3 Comstock, 430.

*By the Court,* DIXON, C. J. Few cases seem plainer to me than this. I think the common council had no right to contract with the plaintiff in the manner specified, and however meritorious his services and beneficial to the public, that their employment created no legal liability upon the city. It is conceded that no such power is expressly given by the charter, and that if it exists, it comes as an incident to some other power which is, or by virtue of the grant of "the general powers posessed by municipal corporations at common law." Laws of 1852, chap. 56, sec. 1. It is a sufficient answer to the first position, that counsel is unable to put his finger upon this or that provision of the charter, and say the power claimed is necessary to the exercise of the power here or there conferred, or to the performance of this or that duty enforced upon the common council. Implications of authority in bodies corporate, more especially those created for municipal purposes, should be clear and undoubted, and the party claiming through them should be able to point them out with certainty and precision. The fact that he cannot, is conclusive that they do not exist. Mere general arguments drawn from the convenience of possessing a power under certain circumstances in case of emergency—conclusions that, if possessed, it might be beneficially exercised, are very dangerous sources of corporate authority. It was with such that the counsel was obliged to present this case. Implications spring from the necessities of some power actually conferred, and not from notions of what would be convenient or expedient under particular circumstances. Hence this case differs materially from that of *Miller vs. Milwaukee,* 14 Wis., 642. There the common council were charged with the care and preservation of the streets, alleys and public grounds, and to discharge that duty it became necessary that the site of the city itself should be preserved. But here was no such necessity. The common council was not charged with the execution of the general criminal law of the state, or any other duty making it necessary for them to employ the plaintiff in the

June Term,
1862.

BUTLER
v.
CITY OF MIL-
WAUKEE.

prosecutions mentioned.    The duty of prosecuting public offenders and bringing them to punishment, is devolved by law upon other officers, especially appointed for that purpose, and if they failed to perform it, it was no affair of the common council.  It did not enlarge their powers, or authorize them to provide for such prosecution at the expense of the city.    The fact that the city had suffered by the crimes alleged to have been committed, did not vary the question. The object of the prosecutions was not to return to the city that which it had lost, but to vindicate the public justice of the state.    The city had not, therefore, any direct interest in the proceedings, more than pertains to all others of a like character.    In common with every other municipal corporation, it was interested in the due administration of the criminal law, and the preservation of peace and good order within its limits; but without authority expressed or implied, it could not interfere with prosecutions of that nature.    They must be left to the proper law officers of the government. Cities and towns are often interested in, and benefitted by, public improvements, such as rail roads, canals and harbors, and it might easily be demonstrated that it would be politic and wise for them to engage in their construction, but no one would argue from that, that they might do so without specific legislative authority.    To prove the expediency of a power does not prove its existence.    Neither does the benefit resulting from an unauthorized act show that it was not a usurpation.

It might be a difficult task to enumerate " the general powers of municipal corporations at common law," but I can find no difficulty in saying what I think is *not* one of them, and that is the public prosecution of offenses of the kind mentioned in the complaint, especially when ample provision is otherwise made by law. If the common council might engage in the prosecution of these, and charge the city with the expense, no reason is perceived why they may not do the same as to all others committed within the corporate limits, and thus double the burdens of the citizens.

The doctrine that a corporation may exceed its powers and still be bound upon the principle of an estoppel—that

it shall not allege its own wrong to avoid a just responsibility to an innocent third person—I think more strictly applicable to private than public corporations. The acts of the officers of the latter more nearly resemble those of public agents, which are not binding unless authorized. At all events I do not think the corporation should be bound in cases like this, when it receives no direct pecuniary equivalent for the sum demanded.

Judgment affirmed.