THE CITY OF WYANDOTTE V. SOPHIA ZEITZ.

1. CITIES OF SECOND CLASS; *Power to Issue Sidewalk Bonds.* Under the laws of Kansas as they existed in 1874 and in 1875, cities of the second class had the power to issue bonds in payment for the building of sidewalks, notwithstanding the fact that the money to be obtained with which to pay said bonds had to be collected as special taxes from the abutting lot-owners.

2. ———— *Judgment against City on such Bonds.* And after such bonds had been issued and had become due, judgment might properly be rendered on them against the city, notwithstanding the fact that the city had properly levied special taxes against the abutting lot-owners to raise funds with which to pay such bonds, and notwithstanding the fact that such special taxes had not yet been collected.

*Error from Wyandotte District Court.*

ACTION brought by *Sophia Zeitz* against *The City of Wyandotte,* to recover upon ten certain bonds of said city issued by the proper officers thereof, which bonds were designated as "special sidewalk bonds." A full copy of one of said bonds is as follows (the others being like it except as to amount, date, and time of payment), to wit:

No. 31.                                                   $69.75.

SPECIAL SIDEWALK BOND—WYANDOTTE, KANSAS.

*Know all men by these presents,* That the city of Wyandotte, in the county of Wyandotte, and state of Kansas, is held and firmly bound unto E. Miller, or bearer, in the sum of sixty-nine and seventy-five one-hundredths dollars, to be paid at the office of the treasurer of said city on the first day of January, 1876, with interest from date at the rate of seven per cent. per annum, for the payment of which said sum and interest as aforesaid, the faith, credit, resources and public property of said city of Wyandotte are hereby pledged.

This bond is issued for the payment of sidewalks built on the north side of Minnesota avenue, between Fifth and Sixth streets.

In testimony whereof, the mayor of the city of Wyandotte, by virtue of a resolution of the council of said city, [SEAL.] has hereto set his hand, and caused to be affixed the seal of said city, this 11th day of November, 1874.

GEORGE B. WOOD, *Mayor.*

Attest: WILLIAM ALBRIGHT, *Clerk.*

The total amount for which judgment was prayed for by plaintiff was $379, on the ten bonds sued on. At the July Term, 1878, of the district court, the plaintiff *Zeitz* had judgment against the defendant. The *City of Wyandotte*, defendant, brings the case here for review. Other facts, pleadings and proceedings are stated in the opinion.

*F. B. Anderson*, and *D. B. Hadley*, for plaintiff in error:

It is claimed by the counsel for Zeitz that the mayor and clerk had power to bind the city generally in said bonds. But inasmuch as all the power they have is conferred by statute, and no such power is conferred upon them, their attempt to exercise that power is void. They attempt to pledge the "faith, credit, resources and public property of the city;" but this they cannot do unless first clothed with power to do it. All powers not conferred upon them are reserved. (*National Bank v. City of Iola*, 9 Kas. 690; *Ranlett v. Leavenworth*, 1 Dillon Ct. Ct. 263; *Leavenworth v. Norton, et al.*, 1 Kas. 432; *Paine v. Spratley*, 5 Kas. 526; *Burns v. Spratley*, id. 551; 10 Kas. 270.) If it be conceded that the city had the power to issue these bonds, then can a general judgment be rendered against the city in the first instance? This question is decided in *Yarnold v. The City of Lawrence*, 15 Kas. 126–133; 1 Dillon Mun. Corp., ch. 14, §§ 402, 491, note 1; *Hunt v. Utica*, 18 N. Y. 142; *Cummin v. Mayor of Brooklyn*, 11 Paige, 596; *Grosvenor v. City of Buffalo*, Gen. T., December, 1855. It is therefore submitted, that inasmuch as the plaintiff's petition simply claimed upon the contract nominated in the bonds, attempting to "pledge the faith, credit, resources and public property of the city," without setting out any negligence upon the part of the city in the performance of any of its duties relative to the levying of taxes to pay them, that therefore the petition set out no cause of action, in law, against the city; and hence the court erred in overruling the defendant's demurrer.

Again, it is submitted, that inasmuch as defendant set out in its answer that it had fully performed all obligations and

conditions required of it by the law of the land, and that these bonds could not be a legal charge against the city generally, but only against the block opposite to the sidewalk for which they were issued, that such defense so set out was stating facts in the answer sufficient to constitute a defense at law, and therefore the court again erred in sustaining plaintiff's demurrer to its answer, or in sustaining plaintiff's motion to render judgment over the answer, which is the same thing, for either process admits all the facts set out in the answer to be true, but claims that they do not constitute any defense under the law of the land.

*H. L. Alden,* for defendant in error:

The substantial question presented by the record in this case is: Had the defendant corporation (plaintiff in error) the power to make the contract declared upon in said action? For if it possessed this power, it must pay its obligations at maturity, or a judgment may be rightfully recovered against it thereon. The consideration of this question involves the construction of the statute as to the authority of cities of the second class, in relation to contracting for the building of sidewalks and paying for the same. It is claimed by plaintiff in error that it did not possess this power, and that the acts of its officers in issuing these bonds were *ultra vires,* because the statute provides that "for making and repairing sidewalks, the assessments shall be made on all lots and pieces of ground abutting on the improvement according to the front foot thereof." (Laws of 1873, ch. 65, § 3.) And it appearing upon the face of these bonds that they were issued for the payment of sidewalks built in said city, said city could only contract to levy the tax therefor against the lots abutting thereon, and had no authority to contract for the payment of the same, either at the completion of the same or at any definite time in the future; but when such levy was made its authority ceased, and the contractor must get his pay as best he can.

Section 4 of the act relating to cities of the second class in

force at the time of the making of this contract, (Laws of 1872, ch. 100,) provides that "each city governed by the provisions of this act shall be a body corporate and politic, and shall have power, . . . *Fourth*, to make all contracts and do all other acts in relation to the property and affairs of the city necessary to the exercise of its corporate or administrative powers."

Section 32 of the same act, as amended, (Laws of 1873, ch. 65,) provides that "the cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by law: . . . *Second*, To open and improve streets, avenues and alleys, make sidewalks . . . within the city."

That said city had the power to contract for the building of sidewalks under these provisions, is not questioned. (Dill. Mun. Corp., §§ 371, 372; *Miller v. The City of Milwaukee,* 14 Wis. 642; *City of Lawrence v. Killam,* 11 Kas. 499; *Ketchum v. City of Buffalo,* 14 N. Y. 356.)

Is the city restricted in its authority to pay for these improvements to a mere agreement to levy a tax therefor against the abutting property, which shall be paid over to the contractor when collected? or can it make a valid contract to pay for the same in cash at the completion of such improvements? or give its obligation, payable at such time in the future as in the ordinary process of tax collection it could hope to realize funds therefor, as in this case?

The charter nowhere gives the contractor any authority to collect these taxes, or any lien upon the abutting property, for his pay, but simply provides for the purpose of meeting the *ultimate* liability therefor, and raising a fund to reimburse said city for the amount paid for such improvements; that "the assessments shall be made on all lots and pieces of ground abutting on the improvement," instead of upon the general property within the city. If it had been the intention of the legislature that the contractor could only get his pay for work and labor performed and materials furnished in

constructing these sidewalks, from the tax levied against the abutting property, it would certainly have made some provision whereby such contractor would be protected in his rights in relation thereto, either by the issuing of certificates thereon to such contractor, with suitable provisions for the collection of the same by him or his assigns, or that the same should be collected for the use and benefit of such contractor, giving him a lien thereon for the amount so due him, or some other adequate means of enforcing payment and securing his claims therefor, none of which is provided for in said act. It is simply provided that the assessments shall be made upon the abutting property, "and collected in like manner as other taxes are by law collectible." (Laws of 1872, ch. 100, § 43.) In this respect the law governing cities of the second class differs from that governing cities of the first class, and the rights and liabilities of said cities in relation thereto must correspondingly differ; and it cannot be presumed that it was intended that the same mode of procedure should be adopted under both statutes. This latter statute provides that the assessments shall be made against the abutting property, and further provides that, upon the completion of the improvement, certificates of the same shall be issued to the contractor, which certificates shall be the tax warrant of the contractor, who may demand, receive and collect the tax so levied in his own name; and upon default of payment thereof, a sale and conveyance of such property shall be made to the person owning such certificate at the time such conveyance is given, or the parties entitled to collect the same may enforce their lien therefor by proceedings in any court of competent jurisdiction. (Laws of 1874, ch. 46, §§ 17 to 25, inclusive.)

The corporation being authorized in general terms to build sidewalks, without specification of manner or means, it necessarily follows that it can contract with some person to furnish the material and perform the labor necessary therefor, to be paid for upon the completion of the job; and it must also of necessity have power to agree upon the mode, terms and time of payment, and to give a suitable acknowledgment

of the indebtedness, by bond, note or other contract. (*Ketchum v. City of Buffalo*, 14 N. Y. 356; *City of Lawrence v. Killam*, 11 Kas. 512, 513; *Curtis, et el., v. Leavitt*, 15 N. Y. 9; *Smith v. Law*, 21 N. Y. 299; *Moss v. Oakley*, 2 Hill, 265; *Kelley v. Mayor of Brooklyn*, 4 Hill, 263; Dillon Mun. Corp., § 407, note; *R. R. Co. v. City of Evansville*, 15 Ind. 395.)

But the statute expressly gives the authority for the issuing of these bonds. Sec. 35, laws of 1872, ch. 100, provides for the issuing of bonds to contractors and others performing work or furnishing materials for making improvements within the city. The building of sidewalks is an improvement of a general nature, for the benefit of the general public and the use and convenience of the whole city. That the improvements mentioned in said section include those chargeable upon local or abutting property, is evidenced by the proviso, "when any of said bonds are issued for the purpose of paying for improvements chargeable to any particular or local property, the taxes to pay the same shall be levied only on such property."

Can it make any difference as to the liability of the city to pay its obligations whether the revenue therefor is collected from a general tax or from local assessments? Would it be contended that the city could plead as a defense to an action upon a ten-year bond issued under the provisions of said § 35, that it had levied the tax for the purpose of paying said bond, but that such tax had not been collected, and therefore it was not liable on such obligation? It seems to us that the argument should apply as well in the one case as in the other. While the law differs as to the manner of raising a revenue to meet its obligations, it does not change the character of the contracts, and there can be no reason why the one must be paid at maturity without regard to whether the tax levied therefor has been collected or not; and the other must wait until such tax has been collected, before an action can be maintained thereon.

In the case of *Yarnold v. The City of Lawrence*, 15 Kas. 126, cited by counsel for plaintiff in error, and which they say is

decisive of this case, this question was not before the court; neither is it there decided that a judgment could not be obtained against the city upon the contract therein mentioned. We submit, then, that the city of Wyandotte had the power to contract for the making of the improvements mentioned; that authority to contract for the making of such improvements necessarily implies the authority to pay for the same, and in the absence of a statute specifying or restricting the manner of such payment, the authority to give a suitable acknowledgment of the debt, by bond, note, or other contract; that the provision of the statute requiring the assessment to be made against the abutting property, relates to the ultimate liability therefor for the purpose of raising a fund to reimburse said city for the amount paid for such improvements, and is a question entirely between the city and the lot-owner, and with which the contractor or his assigns have nothing to do, and in which he has no right or interest; that the city is primarily liable for the making of such improvements, and having executed its contract to pay at a specified time, is bound to pay at such time, without regard to the question of the collection of the taxes assessed for the purpose of meeting such demand.

We submit, that the demurrer to the petition of said plaintiff (defendant in error) was properly overruled for the above reasons, and for the further reason that in any event the question that the bonds were issued without authority cannot be taken advantage of by demurrer, but is a cause of defense. (Dill. Mun. Corp., § 411; *Comm'rs of Leavenworth Co. v. Keller*, 6 Kas. 510; *Comm'rs v. Day*, 19 Ind. 450; *Hamilton v. The N. & D. R. R. Co.*, 9 Ind. 359.)

Said city having authority to issue said bonds in payment for such improvements, and having executed its contract to pay at a specified time, is bound to pay at such time, without regard to the question of the collection of the taxes assessed for the purpose of meeting such demand.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Sophia Zeitz (plaintiff below) against the city of Wyandotte (defendant below) upon several written obligations of said city, issued by the proper officers thereof on the 11th day of November, and on the 20th day of May, 1875, respectively, and due January 1st and February 1st, 1876, respectively, to E. Miller, or bearer, and J. F. Meyer, or bearer, and duly transferred before due to the said Sophia Zeitz for value, which obligations were designated "special sidewalk bonds," for the payment of which "*the faith, credit, revenue and public property of said city*" were therein specially pledged. Said obligations or bonds also contain the following clause: "This bond is issued for the payment of sidewalks built on the north side of Minnesota avenue, between Fifth and Sixth streets." The bonds were due long before the commencement of this action, and had been duly presented for payment.

The petition contains all the usual and necessary allegations under the statute. (Code, §§ 118, 123; *Budd v. Kramer*, 14 Kas. 101.) To this petition said defendant interposed a demurrer, on the ground that the petition did not state facts sufficient to constitute a cause of action, which demurrer was, at the April term, 1878, of said court, overruled, and the defendant allowed to answer.

Said defendant thereupon filed its answer to said petition, admitting that said defendant was a municipal corporation, duly organized and doing business as such, under and by virtue of the laws of the state of Kansas; admitting that said bonds were executed, and denying all other allegations in such petition, and setting up that said bonds were issued in payment for certain special improvements, to wit, the building of sidewalks in said city in accordance with a contract of said city therefor; that the cost of such improvements is chargeable against the abutting property; that a tax against

such property had been duly levied and certified to the proper officer for collection, for the purpose of paying for said improvements; that said taxes have never been collected, and claiming that said city is not liable for the payment of said bonds until such time as the taxes so levied shall be collected and paid into the city treasury; and further, that the acts of the officers of said city in issuing said bonds were *ultra vires*, in that there was no authority for said city to contract for the payment of said improvements or to issue said bonds. Or, to state the new matter contained in said answer in the language of the defendant's brief, (the brief of the city now plaintiff in error,) it is as follows:

"*First*, That after said sidewalks, and hence local improvements, were made, and said bonds issued in payment therefor, its council, September 5, 1875, levied a special tax upon the lots abutting upon said local improvement, and duly published the same in a city paper.

"*Second*, That on the 14th of September, 1875, the city clerk of Wyandotte city certified said levy of taxes up to the county clerk of Wyandotte county.

"*Third*, That on the 15th day of September, 1875, the said county clerk placed said levy upon the tax-rolls of said county for collection as required by law.

"*Fourth*, Defendant averred that it had performed all acts required by law for it to perform, in order to collect the tax from said lots for payment of said bonds.

"*Fifth*, Denies that it has ever refused to pay any creditor when money was in the treasury for such payment, but has always paid out all money to the party entitled to it, on demand.

"*Sixth*, That while the mayor and clerk by the terms of said bonds undertook to bind the entire property of the city for their payment, yet they had no legal or constitutional power so to do.

"*Seventh*, That plaintiff was not entitled to a general judgment against the city, but must look to the lots abutting on the sidewalk made and constructed.

"*Eighth*, That the special tax levied upon said local lots for said improvement had not been collected at the commencement of this action and the filing of the answer."

No reply was filed to said answer, but on the 17th day of

42—21 KAS.

May, 1878, plaintiff filed a motion for judgment over the answer, on the ground that the facts set up on said answer did not raise any issue in said action or constitute in law any defense thereto; which motion was, by the consideration of said court, at the July term, 1878, sustained, and judgment rendered for said plaintiff for the amount due on said bonds. No motion for a new trial or to vacate said judgment was made or presented to the court below.

The plaintiff in error complains that the court erred in overruling the demurrer to the petition of said plaintiff, and in sustaining its motion for judgment over its said answer.

The substantial question presented by the record in this case is: Had the defendant corporation (plaintiff in error) the power to make the contract declared upon in said action? For if it possessed this power, it must pay its obligations at maturity, or a judgment may be rightfully recovered against it thereon.

The consideration of this question involves the construction of the statutes as to the authority of cities of the second class, in relation to contracting for the building of sidewalks and paying for the same. It is claimed by plaintiff in error that it did not possess this power, and that the acts of its officers in issuing these bonds were *ultra vires*, because the statute provides that, "for making and repairing sidewalks, the assessments shall be made on all lots and pieces of ground abutting on the improvement according to the front foot thereof." (Laws of 1873, p. 128, ch. 65, § 3; amended § 32.) And it appearing upon the face of these bonds that they were issued for the payment of sidewalks built in said city, said city could only contract to levy the tax therefor against the lots abutting thereon, and had no authority to contract for the payment of the same, either at the completion of the same, or at any definite time in the future; but when such levy was made, its authority ceased, and the contractor must get his pay as best he can.

Section 4 of the act relating to cities of the second class, in force at the time of the making of this contract, (Laws of

1872, ch. 100, pp. 192, 193,) provides that "each city governed by the provisions of this act shall be a body corporate and politic, and shall have power, . . . *Fourth*, To make all contracts and do all other acts in relation to the property and affairs of the city necessary to the exercise of its corporate or administrative powers."

Section 32 of the same act, as amended, (Laws of 1873, p. 128, ch. 65,) provides that "the cities coming under the provisions of this act in their corporate capacities are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by law: . . . *Second*, To open and improve streets, avenues and alleys, make sidewalks . . . within the city." That said city had the power to contract for the building of sidewalks, under these provisions, is not questioned. (Dill. Mun. Corp., §§ 371, 372; *Miller v. The City of Milwaukee*, 14 Wis. 642; *The City of Lawrence v. Killam*, 11 Kas. 499; *Ketchum v. City of Buffalo*, 14 N. Y. 356.)

Is the city restricted in its authority to pay for these improvements to a mere agreement to levy a tax therefor against the abutting property, which shall be paid over to the contractor when collected? or can it make a valid contract to pay for the same in cash at the completion of such improvements? or give its obligation payable at such time in the future as in the ordinary process of tax collection it could hope to realize funds therefor, as in this case?

The charter nowhere gives the contractor any authority to collect these taxes, or any lien upon the abutting property, for his pay, but simply provides, for the purpose of meeting the *ultimate* liability therefor and raising a fund to reimburse said city for the amount paid for such improvements, that "the assessments shall be made on all lots and pieces of ground abutting on the improvement," instead of upon the general property within the city. If it had been the intention of the legislature that the contractor could only get his pay for work and labor performed and materials furnished in constructing these sidewalks, from the tax levied against the

abutting property, it would certainly have made some provision whereby such contractor would be protected in his rights in relation thereto, either by the issuing of certificates thereon to such contractor with suitable provisions for the collection of the same by him or his assigns, or that the same should be collected for the use and benefit of such contractor, giving him a lien thereon for the amount so due him, or some other adequate means of enforcing payment and securing his claims therefor — none of which is provided for in said act. It is simply provided that the assessments shall be made upon the abutting property certified to the county clerk of the proper county, to be placed on the tax-roll for collection, subject to the same penalties and collected in like manner as other taxes are by law collectible. (Laws of 1872, ch. 100, p. 205, § 43.)

In this respect, the law governing cities of the second class differs from that governing cities of the first class, and the rights and liabilities of said cities in relation thereto must correspondingly differ; and it cannot be presumed that it was intended that the same mode of procedure should be adopted under both statutes. (For the laws relating to cities of the first class, see laws of 1874, pages 64 to 67, §§ 17 to 25.)

The corporation being authorized in general terms to build sidewalks without specification of manner or means, it necessarily follows that it can contract with some person to furnish the material and perform the labor necessary therefor, to be paid for upon the completion of the job; and must also of necessity have power to agree upon the mode, terms and time of payment, and to give a suitable acknowledgment of the indebtedness, by bond, note or other contract. (*Ketchum v. The City of Buffalo*, 14 N. Y. 356; *The City of Lawrence v. Killam*, 11 Kas. 512, 513; *Curtis, et al., v. Leavitt*, 15 N. Y. 9; *Smith v. Law*, 21 N. Y. 299; *Moss v. Oakley*, 2 Hill, 265; *Kelley v. Mayor of Brooklyn*, 4 Hill, 263; Dillon's Mun. Corp., § 407, note 2; *Railroad Co. v. The City of Evansville*, 15 Ind. 395.) But the statute expressly gives the authority for the issuing of these bonds. Section 35, laws of 1872, page 202,

ch. 100, provides for the issuing of bonds to contractors and others performing work or furnishing materials for making improvements within the city. The building of sidewalks·is an improvement of a general nature, for the benefit of the general public, and the use and convenience of the whole city. That the improvements mentioned in said section include those chargeable upon local or abutting property, is evident by the proviso, "When any of said bonds are issued for the purpose of paying for improvements chargeable to any particular or local property, the taxes to pay the same shall be levied only on such property."

Can it make any difference as to the liability of the city to pay its obligations, whether the revenue therefor is collected from a general tax or from local assessments? Would it be contended that the city could plead as a defense to an action upon a ten-year bond, issued under the provisions of said § 35, that it had levied the tax for the purpose of paying said bond, but that such tax had not been collected, and therefore it was not liable on such obligation? It seems to us that the argument should apply as well in the one case as in the other. While the law differs as to the manner of raising a revenue to meet its obligations, it does not change the character of the contracts, and there can be no reason why the one must be paid at maturity without regard to whether the tax levied therefor has been collected or not, and the other must wait until such tax has been collected before an action can be maintained thereon. In the case of *Yarnold v. The City of Lawrence*, 15 Kas. 126, cited by counsel for plaintiff in error, this question was not before the court; neither is it there decided that a judgment could not be obtained against the city upon the contract therein mentioned.

We think that the city of Wyandotte had the power to contract for the making of the improvements mentioned; that authority to contract for the making of such improvements necessarily implies the authority to pay for the same, and in the absence of a statute specifying or restricting the manner of such payment, the authority to give a suitable acknowl-

edgment of the debt, by bond, note, or other contract; that the provisions of the statute requiring the assessment to be made against the abutting property, relates to the ultimate liability therefor for the purpose of raising a fund to reimburse said city for the amount paid for such improvements, and is a question entirely between the city and the lot-owner, and with which the contractor or his assigns have nothing to do, and in which he has no right or interest; that the city is primarily liable for the making of such improvements (*Leavworth v. Mills*, 6 Kas. 298), and having executed its contract to pay at a specified time, is bound to pay at such time, without regard to the question of the collection of the taxes assessed for the purpose of meeting such demand.

Said city having authority to issue said bonds in payment for such improvements, and having executed its contract to pay at a specified time, is bound to pay at such time, without regard to the question of the collection of the taxes assessed for the purpose of meeting such demand.

The court below did not err in overruling the defendant's demurrer to the plaintiff's petition, nor in sustaining the plaintiff's demurrer to the defendant's answer, nor in rendering judgment in favor of the plaintiff and against the defendant for the amount of said bonds; therefore the judgment of the court below will be affirmed.

All the Justices concurring.