THE CITY OF LEAVENWORTH V. LAFAYETTE MILLS, ET. AL.

1. STATUTES—*Construction—Effect.* After chapter 69 of the Laws of 1864, (§§ 3 to 12, pp. 126, 129,) took effect, the City Council of Leavenworth city were not bound any further than they chose to be bound by the provisions of ordinance No. 90 of said city, relating to the grading and improving of streets, alleys, etc., adopted June 24, 1863, under the laws of 1862.

2. CITY COUNCIL—*Powers of.* After the said city had made a valid contract for grading a certain street, to be completed within a specified time, the City Council, under said laws of 1864, had the power, by resolution, to extend the time within which said grading might be done.

3. SPECIAL TAXES—*Liability of City.* A city is primarily liable to the contractor for grading done by him, and unless the city levies a valid tax and provides some means for enforcing its collection from the lot owners, the city will still remain liable to the contractor.

4. PRACTICE—EXCEPTIONS. No particular form or mode of making and saving exceptions is required. An exception to a decision overruling a motion to set aside certain findings or conclusions of law as being "against the law of the land," is sufficient to save said questions of law for review in the appellate court.

*Error from Leavenworth District Court.*

INJUNCTION to restrain the collection of special taxes levied for grading a street. Action commenced July 5, 1869, by Lafayette Mills, H. G. Fauts, Hugh Ewing, and fourteen other persons, as plaintiffs, against *The City of Leavenworth,* John Hosick, as city Treasurer of said city, and John Dugan, as defendants. The said plaintiffs are owners in severalty of certain lots adjacent to, and fronting on Cherokee street in the city of Leavenworth.

On the 27th of December, 1865, a contract was made by the city with Michael Rogers, to grade Cherokee street from Lawrence Avenue to Seventeenth street; the work to be fully completed on or before the first day of June, 1866. Rogers gave a bond to the city in the sum $1000, conditioned for the faithful performance of his

contract, which was approved by the Mayor; and the next day he assigned the contract, with the written assent of the City Engineer, to *John Dugan.* Dugan never gave any bond for the faithful performance of the contract. No work was done under the contract until after the first of June, 1866. On the 26th of June, the city council, by resolution, extended the time for the completion of the work until October 15th; and on the 9th of Oct., in the same manner again extended the time until 30th November. The work was completed on the 4th of December, 1866, and after it was completed the city council accepted the same as a fulfillment of the contract between the city and Rogers; and on the 12th of December, 1866, the city council passed an ordinance assessing and levying a special tax, amounting in the aggregate to $8,735.50, on the property adjacent to said improvements to pay for said grading, which amount was apportioned to and among the different lots and blocks by the City Engineer. Certificates of the amounts due on each lot were issued to Dugan in his own name. This tax not being paid, the City Treasurer had advertised, and was proceeding to sell the lots and blocks of the plaintiffs below, when plaintiffs below, (alleging "a common interest in the subject of the action,") brought their action, praying "that the defendants may be perpetually enjoined from selling said described property, under said certificates of assessment; that said assessment may be declared illegal and void; and that said certificates may be ordered to be delivered up to be cancelled."

Defendant *Dugan* answered, alleging that the contract with Rogers, and assignment to him, had been ratified by the city, had been performed, and the work accepted by the city; that there was due him (Dugan) for such work

the sum of $8,750.50, for which sum, with interest from
Dec. 4th, 1866, he prayed judgment against the city
of Leavenworth. The city of Leavenworth, and John
Hosick, as treasurer thereof, filed a separate answer,
admitting the levy of the tax, the proceedings to sell the
plaintiffs' lots therefor, and the performance of the work
for the improvement of the street for which said special
taxes were levied.

After issue joined, and before trial the defendant *Dugan*
died, and the action was revived in the name of Michael
Jordan, administrator of said deceased.

The same claims were set up in this case respecting
Ordinance No. 90, and the same irregularities complained
of, as in the case of *The City of Leavenworth v. Laing*,
ante, pp. 276, 277.

On the final hearing of the case below, the court ren-
dered a judgment in favor of the plaintiffs, and against
the city and the city treasurer, granting the perpetual
injunction prayed for in the plaintiffs' petition; and the
court also rendered judgment in favor of said Michael
Jordan, administrator of the estate of said Dugan, de-
ceased, and against the city for the value of said grading
and interest.

The *City of Leavenworth* claims that the judgment of
the court below is erroneous, and brings the case here
for review.

*H. Miles Moore* and *E. Stillings*, for plaintiff in error:

1. The plaintiffs below have no equities. They laid
by, enjoying the benefit of the work done, until part of
the persons whose property was so assessed had paid
their assessments, and then sought the aid of a court of
equity to protect their own property from its share of

the burden, thereby compelling the city to levy by general tax on the property on which assessments had been made for this work, as well as all other property, the balance of the expense of the work, and causing great injustice to the property holders who had paid their assessments, and also to all other property holders in the city who had paid for grading their own streets. 1 Cal., 455; 15 O. St., 64.

2. Chapter 69 of the laws of 1864, under which this work was done, gave full power to the city to make improvements in any manner they saw fit, and to levy and collect the expense of the same on the adjacent property, and unlike the former law, did not require the city to prescribe the manner of doing it by ordinance. *Hines, et al., v. The City of Leavenworth,* 3 Kas., 136.

After the passage of said ch. 69, Ordinance No. 90, passed in 1863, did not bind the mayor and council at all. It was in effect abrogated. They could act by *resolution* and by a *majority* vote. 3 Wend., 277; 22 How., 422; 6 Wheaton, 3, 598.

The ordinance as to making plats, etc., even if it had not been abrogated by the law, was directory merely. 10 Wend., 659, 669.

Injunction to restrain the collection of taxes or assessments will not be granted on account of irregularities in the assessment. 16 Ohio St., 615; 6 Mich., 57; 18 Md., 1; 22 Ill., 34, 574; 33 Barb., 147.

3. The judgment against the city in favor of Dugan's administrator is wrong. The *property benefitted* by the improvement is liable, and not the property of the whole city. The city could not be held liable even if the work was improperly done after the time for doing it had expired; nor in case of *failure* to comply with the ordi-

nance.   In either case the *contractor* was bound to know the law and the facts, and he cannot complain.   2 Kas., 357.

The court below should have adjudged the assessment to be a lien on the property, and aided the parties who had done the work to collect the same; but in no event was the city liable to a judgment for it.

*J. L. Pendery* and *James McCahon*, for Mills, Fauts, Ewing, and others, (plaintiffs below:)

1. The plaintiff in error, having failed to except to the conclusions of law is deemed to have waived all exceptions thereto, and cannot now have those conclusions reviewed.   1 Kas., 335; 2 Kas., 337; 7 O. St., 75; 12 O. St. 1, 7; 8 Ind., 96, 424, 452; 9 Ind., 153, 176, 260, 295, 366.

2. The power to levy and collect special taxes for improvements is a statutory authority, depending alone upon the will of the law-making power, and not upon the consent of the owners of the land taxed.   The statute creates the power, selects the agent to execute it, and prescribes the formalities which shall attend its execution; and unless these formalities are strictly followed the proceedings will be void.   Black. on Tax Titles, 33, 447; 3 Denio, 599; 1 Kas., 432; 2 Kas., 357, 371.

3. The preparation of a plat of the street and the adjacent real estate, and a plan and specifications of the work to be done, was a condition precedent to the letting of the contract or the doing of the work; without these, the contract is void, and no charge was created against the owners of the lots.   Ordinance No. 90, §§ 5, 6; chap. 69, Laws of 1864, p. 126, § 3; 9 Barb., 153; 25 Wend., 696; 53 Barb., 48.

4. The council failed to prescribe the manner in which the work was to be done. They could not delegate that authority to any other officer or person. 6 N. Y., 92; 23 Iowa, 410; 13 Cal., 540.

5. The assignment of the contract by Rogers to Dugan was unauthorized by law, and void. The bond given by Rogers was not in double the amount of the contract price, as required by the ordinance. The certificates should have been issued to Rogers, the contractor, instead of Dugan, his assignee. Blackw. on Tax Titles, 376.

6. The plaintiff in error having made no objections to the remedy, by demurrer or answer at the trial, or at any time or in any manner, in the court below, it is now too late to make any such objections. 2 Johns. Ch., 339, 369; 4 id., 290; 4 Paige, 81; 2 Mich., 560.

7. Wherever the sale of lands for taxes would create a cloud upon the title, injunction is the proper remedy. Hill. on Inj., 383; 16 Ohio, 574; 38 Penn. St., 309; 18 Wis., 92; 5 O. St., 361; 1 Beasly, 227; 15 Cal., 33; 24 Mo., 20; 18 Md., 284.

And where, as in this case, the certificates of sale and the tax deed would be " *prima facie* evidence of the validity of the tax, and regularity of all steps and proceedings had for the levying and collection thereof," injunction is the proper remedy. 12 Mich., 414; 4 Barb., 16; 18 Cal., 303; 9 Paige, 388.

*Thomas P. Fenlon* and *Clouyh & Wheat*, for Dugan's administrator :

1. The judgment in favor of the administrator ought not to be reversed.

If the assessment levied by the city was not a legal tax, then we submit that by force of the proviso in § 11, p,

129, laws 1864, the administrator was entitled to such judgment, as well as upon the contract itself.

Ordinance No. 90 required a plat of the street and adjacent real estate, and plans and specifications of the proposed work to be made by the city engineer; and because such plat, and plans, and specifications were not made out, the assessment was illegal. Sec. 30, p. 133, Laws of 1864; 2 Kas., 357, 373; 40 Ill., 146; 9 How., 248; 10 Minn., 59.

2. The city could contract by resolution : 22 Indiana, 492, 502; 32 California, 269; 29 N. Y., 215. And the same rules as to agents, ratification, estoppel, etc., are applicable to municipalities, as to individuals, or private corporations : 17 N. Y., 450; 16 Cal., 264; 11 Wis., 490; 42 N. H., 136; 4 Ohio St., 100; 14 Penn. St., 81.

3. That the failure of the city officers to do those acts necessary to authorize the city to levy a legal tax for the cost of the work, would not invalidate an express, nor an implied contract of the city to pay its contractor or his assignee.

The administrator was entitled to his judgment in the same action in which the injunction was granted. Civil Code 1862, § 381; 3 Kas., 413; 5 B. Monroe, 199; 9 Paige, 90. Civil Code 1868, § 396.

And the city, to reimburse itself may, notwithstanding the judgment, collect the taxes from the owners of the lots. 12 N. Y., 140; 23 Iowa, 410.

The opinion of the court was delivered by

VALENTINE, J. : That the City of Leavenworth had ample power to grade streets and assess the cost of grading the same to the lots adjacent thereto, and require

that the contractor should look exclusively to such assessment for compensation, will not be denied by the plaintiffs below, nor by Dugan's administrators. But they contend that there were many irregularities, which released the lots and the lot owners from liability and made the city itself liable for the grading.

These supposed irregularities are as follows: Rogers' bond was not double the amount of the contract price of the grading; no plats, plans or specifications, of the grading were ever made out; the city council never prescribed how the grading should be done; no grade was ever established; the contract with Rogers was assigned to Dugan, which they claim could not be done; Dugan did not give bond; the certificates of grading were given to Dugan, when they should have been given to Rogers; the work was not done within the time prescribed by the contract. And they further claim that the city council could not, by a resolution, extend the time for doing the work, and could not, either by resolution or ordinance, ratify what had already been done, so as to cure any of the said irregularities.

On the other hand the city claims: First, There were no irregularities; and, Second, That if there were, the contractor knew of them as well as the city, and that, therefore, in no event is the city liable.

All the transactions which form the subject of this litigation, were had under chapter 69, laws of 1864, §§ 3 to 1. STATUTE—construction of—effect. 12. Said sections gave to cities and city councils the most ample and complete powers in grading and improving streets, alleys, etc. While the legislature clothed the city council with full power in the premises, yet they did not attempt to define just how said power should be exercised. They left the city coun-

cil to exercise a great deal of discretion in the use of such power. We do not think it can reasonably be contended that the city or any of its officers went beyond the scope of the authority given to them by the legislature, or that they infringed or violated any law of this State or of the United States, from the time the contract was made up to the time of levying the special tax. The contract was regularly made; the bond was regularly approved; the contract was assigned according to the terms of the contract itself; the grading was done under the supervision of the city engineer, as provided by the contract, and was approved by the city, and the special tax to pay for the grading was regularly levied by the city council.

It is contended, however, that the provisions of a certain city ordinance (No. 90, passed June 14, 1863, under the laws of 1862,) were violated. We have already decided in other cases, (*City of Leavenworth v. Laing, et al.*, ante p. 274, and *Paine v. Spratley*, 5 Kas., 525,) that portions of that ordinance never had any force or effect; * and we now decide that other portions of the same were repealed and greatly modified by the said laws of 1864. After the passage of the laws of 1864, the city council was at liberty to obey that ordinance (where the ordinance did not itself violate the law) or not, just as they chose.

The principal objection urged against the validity of the said special tax is: " That the contract had expired by its own limitation before any of the work was done, and could not, therefore,

2. CITY COUNCIL—
powers of.

[ * IN *Paine v. Spratley*, the Court say: "The city council of Leavenworth acted without authority of law in the passage of those provisions of Ordinance No. 90 which attempted to provide for the sale and conveyance of real estate for the non-payment of special taxes for the improvements of streets and alleys." 5 Kas., 549.]

be revived by any resolution of the city council." The city also urges this as an objection to any recovery against itself. It will be perceived, by reading the contract, that the city was not bound, by the terms of the contract, to consider time as of the essence of the contract. Probably the city might have done so if it had so chosen; but it did not so choose. It extended the time for the grading to be done by a resolution of the city council.

But it is claimed that the time could not be extended by a resolution, but, if extended at all, that it must be done by an ordinance. The statute, however, nowhere requires that such a thing should be done by an ordinance; nor does it even require that the grading of the streets should be ordered by an ordinance. In the absence of such statutory requirement we suppose that the city council might extend the time as well by a resolution as by an ordinance. 3 Dutcher, N. J., 493, 498; 17 N. Y., 449; 29 N. Y., 215, 217; 39 Barb., 266, 269. But after this work was all done and completed, it was ratified by an ordinance levying said special tax.

Up to and including the levying of said special tax we think the proceedings were sufficiently regular to be valid under the law, and binding upon all parties. But the city stopped at that point. The city provided no means of collecting said special tax. The city did not sue the lot owners, nor provide for selling their lots under section six of said chapter 69, Laws of 1864.

Under such circumstances, what are the rights of all the parties? The city treasurer had no authority to sell said lots, nor to advertise them for sale: *City of Leavenworth v. Laing,* and *Paine v. Spratley, supra.* The contractor and his representatives had no authority to sell

said lots, nor to enforce the payment for the contractor's services, in any other manner, from the lot owners. The lot owners are never directly or primarily liable to the contractor for grading done by him. They 3. CITY is primarily liable to pay for special improvements. are liable to the city only, and the city is primarily liable to the contractor. (*Argentius v. City of San Francisco*, 16 Cal., 255, 258, 263, 281.) When the city fails to provide any means for collecting the value of the grading from the lot owners and paying the same to the contractor, it leaves the contractor without any possible means of ever obtaining compensation for his services, except by suing the city. The city is liable to him; and the only way by which the city can relieve itself from such liability is by levying a legal tax, (§ 11, Laws of 1864, p. 129;) and to levy a legal tax, does not in such a case mean to simply make an assessment; it means to make the assessment, and also to provide some means for its collection. In this case the city did not take the necessary steps to relieve itself from liability to the contractor, and hence the judgment of the court below, against the city and in favor of the representatives of the contractor, for the value of the grading was correct.

While it follows from what we have already said, that the city treasurer is liable to be restrained by order of injunction from selling the plaintiffs' lots, it by no means follows that the city itself is so liable. The city is not so liable, because, *first*, the city had full and ample power to provide for the sale of said lots; *second*, the city never attempted to exercise that power. Hence, it was error for the court below to allow the injunction, as it did, against the city. Without deciding in this case, whether the city still has power to collect this spe-

cial tax from the lot owners, by selling their lots, or by suit, we may say that it would seem that it has such power : *Mayor, etc., v. Colgate*, 12 N. Y., 140 ; *McLunnery v. Reed*, 23 Iowa, 410, 417.

There is one question raised by the counsel for the defendants, which we hardly think is presented by the record. Said counsel claims that the city did not except to the conclusions of law as stated in the findings of the court. It is true that the city did not except in form or in terms, but it did except in substance. The court found only two conclusions of law, and the second is only a corollary from the first. Immediately after the court announced its findings, the city moved for a new trial, among other grounds, for the reasons, "that said findings are contrary to law ; that the *findings of law are against the law of the land,* and against the evidence in the case." The court overruled said motion. The city excepted, and the court then entered judgment against the city, and the city again excepted. After an examination of such a record it would be exceedingly technical to say that the city had not saved said questions of law, so as to present them properly to this court.

After a careful examination of all the questions involved in this case, we are of the opinion that the judgment of the court below in favor of the administrator of the estate of John Dugan, deceased, and against the city, for the value of the grading should be *affirmed.* That the judgment in favor of the plaintiffs below, and against the city, forever restraining the city from selling said lots, should be *reversed.* That the judgment in favor of the plaintiffs below, and against the city treasurer, (which is virtually against the city) forever restraining him from selling said lots, should be so modified that the city treas-

*4. PRACTICE. Exceptions, how made.*

urer shall be forever restrained from selling said lots, unless the city shall first make a legal provision for their sale.

The judgment in favor of the plaintiffs below, and against Dugan's administrator, forever restraining him from selling said lots, cannot of course be disturbed in this court, as said administrator is not here complaining, and the judgment against him does not affect the rights of the other parties.

This case is remanded for further proceedings in the court below, in accordance with this opinion.

All the justices concurring.