THOMAS CASEY, *et al.*, v. THE CITY OF LEAVENWORTH.

1. EXAMINATION OF WITNESS; *Testimony on Cross-Examination.* Where a city engineer is introduced as a witness by the plaintiff for the purpose of proving that an apportionment of a special tax made by his predecessor is incorrect; and it is shown on his examination-in-chief that he made another and subsequent apportionment of the same tax, it is not substantial error for the court to permit the defendant on cross-examination of such witness to introduce said second apportionment in evidence where the most that the defendant could want of it would be to show that it was in fact made.

2. CONTRACT WITH CITY; *Grading Streets; Terms of Contract; Rights of Contractor.* In 1873 a street was graded in a city of the first class under a certain contract whereby the city agreed to pay for said grading by levying "a special tax" for the cost thereof "upon the lots and parcels of ground adjoining said work," and the plaintiffs who were the contractors agreed on their part to "look exclusively to said special tax for their pay." The grading was done, and the said special tax was levied; but the city engineer in making the apportionment thereof made a mistake, and the mistake was not discovered until about a year thereafter, when the city engineer rectified the same by making a new and correct apportionment; and everything except said apportionment was done according to law, and according to said contract, and everything was done to the entire satisfaction of all the parties up to the discovery of said mistake, when the plaintiffs became dissatisfied. Said special tax is now being collected according to law. *Held,* That under the circumstances of this case the contractors cannot maintain an action against the city for the cost of said grading, or for negligence in the collection of said special tax; but they must in accordance with their contract "look exclusively to the said special tax for their pay." And it would make no difference whether in making the first apportionment the work was done by the city engineer himself, or by his assistant.

### *Error from Leavenworth District Court.*

ACTION by *Casey* and another to recover damages for alleged negligence of the city in failing to collect the sum of $12,976.84 claimed by plaintiffs as due them upon a contract for grading a public street. Trial at May Term 1875. Demurrer to plaintiff's evidence sustained, and judgment in favor of the city for costs. Plaintiffs bring the case here on error.

*F. P. Fitwilliam,* and *Lucien Baker,* for plaintiffs.

*H. Miles Moore,* and *E. Stillings,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Thomas Casey and Patrick McCristal against the city of Leavenworth, to recover damage for alleged negligence on the part of the city in failing to collect $12,976.84 claimed to be due the plaintiffs for grading Lawrence Avenue, a public street in said city. The grading was done under a contract between the plaintiffs and the defendant, by which contract the defendant agreed on its part to pay for said grading by levying "a special tax upon the lots and parcels of ground adjoining said work" for the cost of said grading; and the plaintiffs on their part agreed, that they would "look exclusively to the said special tax for their pay." Everything seems to have been done to the entire satisfaction of both parties, in exact accordance with the contract, except that about a year after the work was completed it was discovered that the city engineer had made a mistake in making the apportionment of the said special tax. The cost of the grading amounted to $12,976.84; and the city, by an ordinance, levied a "special tax" for that amount "upon the lots and parcels of ground adjoining said work." The city engineer then apportioned said special tax, as he believed, in accordance with the statute. (Gen. Stat. 137, § 26.) All necessary and proper proceedings for the collection of said tax then followed in supposed conformity to law; and so far as anything is shown by the record of this case, everything from first to last was done to the entire satisfaction of all the parties, and everything was done correctly, and in exact accordance with law and with said contract, except the said mistake made in said apportionment; and as soon as said mistake was discovered the city engineer corrected the same by making a new and a correct and legal apportionment. Said work was completed October 20th 1873. Said second apportionment was made March

2d 1875. And this suit was commenced March 22d 1875. On the trial of this case in the court below the plaintiffs introduced as a witness, G. W. Vaughn, who was then city engineer of said city. He was also the city engineer who made the second apportionment, and was the successor of the city engineer who made the first apportionment. He was introduced for the purpose among other things of proving that said mistake had been made in making the first apportionment. During his examination-in-chief the following among other evidence was elicited, to-wit:

"*Question.*—Can you tell what mistake there is in that [the first] apportionment of the city engineer? *Answer.*—I could not undertake to say what mistakes there are, without comparing it.

"*Question.*—You subsequently made another? *Answer.*—Yes, sir."

The witness then testified in detail with reference to said supposed mistakes, made in the first apportionment. Then on cross-examination of the witness the following additional evidence was elicited, to-wit:

"*Question.*—Is this the apportionment you made? *Answer.*—I made this.

"*Question.*—When did you make it? *Answer.*—This is dated March 2d 1875."

The defendant then with the permission of the court, but over the objections and exceptions of the plaintiffs, introduced this last apportionment in evidence, and this the plaintiffs now assign for error. They claim, *first*, that a second apportionment could not legally be made, and therefore that said second apportionment could not be competent evidence at any time in the case; and *second*, that even if said second apportionment could be legally made, and was competent evidence in the case, that still it was not proper to introduce it in evidence on cross-examination of the plaintiffs' witness, but that it should have been reserved and introduced by the defendant after it opened its case. Now that said second apportionment could be legally made, and was competent evidence in the case, we think there can scarcely be any room to doubt, and

we shall hereafter give our reasons for so thinking.    But could it properly be introduced in evidence on cross-examination of the plaintiffs' witness? We are inclined to think that it could, in the discretion of the court below.    The plaintiffs themselves showed that it had been made, and it itself showed just where the witness believed mistakes had been made in the original apportionment.    It was really the witness himself, explaining his own testimony with regard to said mistakes.    But without deciding this question definitely, we would say, that no harm could have been done to the plaintiffs by its introduction, and therefore. no substantial error was committed.    The plaintiffs had already proved that said second apportionment had been. made, and without any showing to the contrary it would be presumed that the same was a correct apportionment.    And this is as much as the defendant could have wanted to prove by the introduction of the same in evidence.

When the plaintiffs rested in the introduction of their evidence, the defendant demurred to the plaintiffs' evidence on the ground that it did not prove any cause of action against the defendant; and the court below sustained the demurrer. And this the plaintiff also assigns for error.    We are inclined to think that the court below did not err in this ruling.    The evidence did not, as we think, prove any cause of action against the defendant.    No wrong or laches is imputed to the city except said mistake of the city engineer.    And such a mistake we hardly think is a sufficient foundation for a cause of action against the city.    The city merely agreed to levy said special tax, and this the city did; and the plaintiffs agreed to "look exclusively to said special tax for their pay."    Now, under the circumstances of this case we would think that when the city levied said special tax it was as much the duty of the plaintiffs to see that the same was properly apportioned, as it was that of the city; and the plaintiffs had vastly more interest in the matter than the city had.    And therefore it would seem, that if the plaintiffs did not use due diligence in endeavoring to have a proper apportionment made, their

negligence would be greater than that of the city. The law prescribes how the apportionment should be made, and who should make it. (Gen. Stat. 137, § 26.) And the city has nothing whatever to do with it, unless it can be said that what is done by the city engineer is done by the city. Aside from the acts of the city engineer the city has done all that it could possibly do for the collection of said special tax; and in this respect this case differs widely from the case of *Leavenworth City v. Mills*, 6 Kas. 288. In that case the city after levying a special tax wholly neglected to provide any means for its collection, and at that time there was no law or ordinance under which the tax could be collected without further action by the city itself. In this case, if the city had prevented the collection of said special tax, or if it had diverted the same to some other use, it would of course have made itself liable to the plaintiffs. But the city has not done any such thing. On the contrary, it has done all that it could do to assist the plaintiffs in getting the benefit of said special tax.

It is claimed however that the city engineer is the agent of the city; that an assistant engineer is still more the agent of the city; and therefore, that the city is responsible for the acts or omissions of the city engineer and his assistant. It is also claimed that said incorrect apportionment was in fact made by the assistant engineer, and not by the engineer himself. Now this is not sufficiently shown; but if it were shown we suppose it would make no difference. The apportionment purports to have been made by the engineer himself, and in law it is his, even if the assistant did do the work on it. It is probably true, that in some cases the city engineer acts as the agent of the city; but in many cases he does not. In many of his official acts the city has no possible interest whatever, and is not responsible for them. In this particular case he may have acted as the agent of both of the parties, and if so, then the mistake made in the apportionment was the mutual mistake of all the parties, and no particular one should be held responsible for it. All parties supposed that the apportionment was correct; and the plaintiffs, who were

more interested in its correctness than any of the other parties, accepted it, acquiesced in it, and adopted it as correct. We therefore hardly think that they are the proper parties to now complain of it. Besides, the city engineer corrected the mistake as soon as he discovered it, and therefore the only injury that resulted from such mistake was a little delay.

But it is claimed that the city engineer had no power to correct said mistake. We think he had. Sec. 30 of the act of 1868 relating to cities of the first class, as it originally stood, (Gen. Stat. 138,) and as it was afterward amended in 1870, (Laws of 1870, p. 122,) and as it was again amended in 1871, (Laws of 1871, p. 167,) and § 24 of the act of 1874 relating to cities of the first class as it now stands on the statute book, (Laws of 1874, p. 67,) provide for just such a thing being done. Section 30 as amended in 1871 we think has never been repealed. But even if it has been repealed, it has been so repealed impliedly only by the said act of 1874. And that act provides that "all proceedings relating to the levy and collection of general and special taxes, and the sale and conveyance of land for the nonpayment thereof, shall remain in full force and be completed under existing laws." (Laws of 1874, p. 56, § 1.) This we think is a sufficient saving-clause. Said special tax is now in process of collection, and some of it has been collected; and we think the plaintiffs in accordance with their contract should be left to "look exclusively to the said special tax for their pay."

Entertaining these views, we think the judgment of the court below must be affirmed.

All the Justices concurring.