CITY OF ATCHISON v. JACOB LEU.

CITY — *Street Improvements* — *Liability.* Where a city of the first class contracts for curbing and guttering a street, and issues its warrants to the contractor in payment therefor, the city is primarily liable to the contractor on said warrants, and, to reimburse itself, must levy and collect an assessment against the property liable therefor.

*Error from Atchison District Court.*

THE opinion states the nature of the action and the facts. Judgment for the plaintiff, *Leu*, at the October term, 1888. The defendant *City* brings the case to this court.

*W. D. Gilbert*, city attorney, for plaintiff in error.

*H. M. Jackson*, for defendant in error.

Opinion by STRANG, C.: This was an action on a certain warrant of the city of Atchison issued to Thomas M. Hacket, or bearer, and sold and transferred by said Hacket to the plaintiff below, Jacob Leu. Said warrant was issued to Hacket in part payment for work done by him in curbing and guttering Fourth street from Park street to Q street, in the city of Atchison. The petition set out the issuing of the warrant to Hacket, the assignment thereof by Hacket to the plaintiff, the levy of the assessment upon the property, its extension upon the tax-roll of Atchison county, its payment to the treasurer of said county April 5, 1884, and the presentation of said warrant by Leu to the treasurer of the city of Atchison for payment August 17, 1886, and his refusal to pay. The city filed a motion asking the court to require the plaintiff to make his petition more definite and certain. This motion was overruled. An answer was then filed setting up the statute of limitations as a bar, and also alleging that no part of the money said to have been collected by the county treasurer as·a special assessment for the work done by Hacket had ever been paid over by the county to the city treasurer. Reply was filed, denying new matter in the answer. When the case came

·on for trial, the city objected to the reception of any evidence under the petition in the case, for the reason that it did not state any cause of action. This objection was overruled. Plaintiff below then introduced his evidence and rested, whereupon the city demurred to the evidence, which demurrer was ·overruled. The city presented no evidence, and the court ·directed a verdict for Leu. Motion for a new trial was argued, and overruled.

There is really but one question in this case. It was raised in divers ways, but it is the same question after all, whether raised by the motion to the petition, objection to the evidence under the petition, or demurrer to the evidence of the plaintiff on the trial. The question is, was the city liable in this case, without a showing on the part of the plaintiff below that the money paid to the county treasurer on the special assessment for the work done by Hacket, and for which the warrant was issued to him, was ever turned over by the county treasurer to the city? It is admitted that if the money collected on such assessment reached the city treasury, the city is liable, and that the plea of the statute of limitations is eliminated from the ·case. The admissions and evidence show that Hacket·guttered and curbed Fourth street from Park to Q street, in the city of Atchison; that the warrant sued on in this case was regularly issued to him as part payment therefor; that he transferred the same to the plaintiff below, Jacob Leu; that an assessment ·was made to pay for said work upon the property liable therefor, which assessment was paid to the county treasurer April ·5, 1884; that on several different occasions Leu called on the ·said treasurer with his warrant to get the money thereon, and payment to him was refused. He then presnted his warrant to the city treasurer and demanded payment, which was also refused.

We think these facts render the city liable. The city had the power to get the money from the county treasurer. It, in ·all likelihood, could have got the money by asking for it. If not, it could certainly have got it by proper proceedings at law. Leu could ·not get the money out of the county treasury.

There is no process of law whereby he could have got it. He had no claim against the county, but the city had a claim against the county for the money. It was made the duty by statute for the treasurer of the county to pay such fund over to the city. And if he did not do so, it was the duty of the city to compel him to pay it over. The money having been paid to the county treasurer, and it being the duty of the city to see that such fund was paid into its treasury by the county treasurer, the city was liable to Leu on its warrant, whether it got such money from the county treasurer or not. The money was paid into the treasury of the county April 5, 1884. Leu presented his warrant to the city treasurer and demanded payment August 17, 1886. Nearly two years and a half elapsed after the money was paid into the county treasury before Leu presented his warrant to the city for payment, and payment was refused for the reason that the money to pay it was not in the treasury. If the money was not in the city treasury at that time, it should have been. The city could not neglect for more than two years its duty to get the money out of the county treasury, and still justify its refusal to pay upon the ground that it did not have the money in the treasury to pay the warrant. In the case of *City of Leavenworth v. Mills*, 6 Kas. 288, it is said:

"The lot-owners are never directly or primarily liable to the contractor for grading done by him. They are liable to the city only, and the city is primarily liable to the contractor. When the city fails to provide any means for collecting the value of the grading from the lot-owners and paying the same to the contractor, it leaves the contractor without any possible means of ever obtaining compensation for his services, except by suing the city. The city is liable to him; and the only way by which the city can relieve itself from such liability to the contractor is by levying a legal tax."

We think the logic of this case is, that the city shall be primarily liable to the contractor, and that it shall reimburse itself by levying and collecting a tax for the work from the property liable therefor. This case not only requires the city to collect the tax, but to pay it to the contractor. The con-

tractor is no better off after the city has made the assessment and the tax is paid over to the county treasurer than before this is done, if he cannot look to the city for his pay, because he has no means by which he can get the money collected to pay his claim out of the county treasury. In *City of Wyandotte v. Zeitz*, 21 Kas. 661, the court says:

"The provision of the statute requiring the assessment to be made against the abutting property relates to the ultimate liability therefor, for the purpose of raising a fund to reimburse said city for the amount paid for such improvements, and is a question entirely between the city and the lot-owner, and with which the contractor or his assigns have nothing to do, and in which he has no right or interest; that the city is primarily liable for the making of said improvements, (*City of Leavenworth v. Mills*, 6 Kas. 298,) and, having executed its contract to pay at a specified time, is bound to pay at such time without regard to the question of the collection of the taxes assessed for the purpose of meeting such demand."

So in this case, we think the city is primarily liable, and must pay, whether or not it has recovered the money paid over to the county treasurer to reimburse said city for its payment on the warrant for said work. We do not think the case of *Casey v. City of Leavenworth*, 17 Kas. 189, cited by plaintiff in error, is authority in this case. In that case the contractors agreed to look to a special levy for their pay. That case is decided upon the special circumstances of that case, and is distinguished from the case of *City of Leavenworth v. Mills*, 6 Kas. 288. In this case it is not certain· that the city had not received the money in question from the county treasurer. The city attempted to show that it had never received it from the county, but from the evidence on that subject, showing the method of doing business between the city treasurer and the county treasurer, we do not see how the city treasurer can tell whether he ever received the particular fund collected to pay the warrant sued on or not. He received from the county treasurer large sums of money after the fund arising from the assessment to pay for the work represented in part by the warrant sued on was paid into the county

treasury, and all the city treasurer knows about the character of the money so received is what the county treasurer told him. He never received any information from the city clerk, whose duty it was to take triplicate receipts from the county treasurer for the money paid by said treasurer into the city treasury. We think the judgment of the district court should be affirmed.

By the Court: It is so ordered.

All the Justices concurring.