S. M. HELLER v. THE CITY OF GARDEN CITY.

No. 9946.

1. CITY OF SECOND CLASS — *may plant and maintain shade trees on streets and pay by assessments as it may for sidewalks.* A city of the second class may contract for planting, maintaining and protecting shade trees on its streets, and for the purpose of paying for the same may make assessments and collect taxes in the same manner as provided for assessing and collecting taxes for sidewalks.

2. ——— *refusing to make assessments promised by such contract, becomes liable, generally, for the amount.* Such a contract made by a city stipulated that assessments on the abutting property should be made and accepted as payment of the contract price of the improvement; but when the work was done, the city repudiated the contract, and refused to make assessments or take any of the necessary steps toward providing a fund for the payment of the contractor. *Held,* that the city became liable to pay the contract price; and that the contractor might maintain an action against it therefor.

Error from Edwards District Court. Hon. S. W. Vandivert, Judge. Opinion filed May 8, 1897. *Reversed.*

THIS was an action by S. M. Heller against the City of Garden City to recover for trees planted in pursuance of a contract made with the City. In his petition he alleges the passage of an ordinance which provided for the planting and growing of shade trees on the streets of the City, to be paid for by the owners of property abutting on the streets so improved· It was ordained that the committee of the council should enter into a contract with parties in the name and on behalf of the City, but that no liability should be incurred by the City to pay for the planting of trees, except out of a fund raised upon assessment and levy of taxes against the abutting property, and that no liability should be incurred to pay for trees except such as had been planted for two years and were, in the opinion of the city council or of some agent appointed by the council to examine and report upon the condition of the trees, in a thrifty and prosperous condition. It was further provided by the ordinance "that whenever there shall be any payment due under it, the party contracting with the City shall present his claim to the city council, specifying the lots and pieces of ground abutting on the improvements, certified to as correct by the street commissioner of said City, and the city council shall then upon finding the claim to be correct levy an assessment against the lots and pieces of ground abutting on such improvements according to the front foot thereof, and warrants shall be drawn payable only from the fund raised by such special taxation to pay for such planting of trees so contracted for." Accordingly, on February 18, 1888, the City entered into a contract with W. E. Dabney for the planting of trees along a number of the streets of the·City, at the price of $1.35 for each tree found at the end of two years

to be in a thrifty and prosperous condition, and agreeing that warrants should be drawn in payment for the trees in accordance with the provisions of the ordinance. Trees were planted in compliance with the provisions of the contract, and it is alleged that, on May 30, 1890, there were growing in the City 15,720 trees, planted and maintained by Dabney and his assigns under the contract, upon which there was due the sum of $21,222. On that day, the plaintiff tendered to the street comissioner of the City a record of the trees planted under the contract, specifying the lots and pieces of ground abutting thereon, and requested the street commissioner to certify the same as correct ; but the street commissioner refused to receive the record and refused to certify as requested. On May 30, 1890, at a regular meeting of the mayor and council, the plaintiff tendered the officers of the City a record of the trees planted under the contract, and requested them to receive the same and to instruct the street commissioner to examine the trees and certify to so much of said record as was found to be correct. He also requested the council to examine the trees, either in person or by agent, with a view of determining how many of the trees complied with the contract; to take the necessary steps to ascertain the amount due plaintiff, and to make an assessment and levy of taxes as provided in the contract; but the officers of the City refused to comply with the request or to recognize the contract, and have ever since repudiated it. It is further alleged that on May 30, 1890, there were 2,047 trees which had been growing for one year, which were of the value of ninety-five cents each ; that the services in planting and maintaining them were of the actual value of $1,944.65 ; and that on May 30, 1890, there were 1,145 trees which had been planted in the year 1890,

and that the value of the plaintiff's services in planting them was $629.75. There is an averment that all rights under the contract with the City had been transferred to the plaintiff by assignment; and he demanded judgment against the City for the sum of $23,796.40.

An answer was filed by the defendant. When the case was called for trial the defendant objected to the introduction of any evidence, for the reason that the petition failed to state facts sufficient to constitute a cause of action. The court sustained the objection, and the plaintiff excepted to the ruling.

*H. F. Mason*, for plaintiff in error.

*G. L. Miller*, City Attorney, for defendant in error; *A. J. Hoskinson*, of counsel.

JOHNSTON, J. The planting of shade trees upon the streets is an improvement of recognized public benefit, and the power to provide for planting, maintaining and protecting them is expressly conferred upon the cities of the class to which Garden City belongs. Gen. Stat. 1889, ¶ 789. As an improvement, they are placed on a footing with sidewalks, and are provided and paid for in the same manner as sidewalks are provided and paid for. While provision is made that assessments may be levied against abutting property to pay for such improvements, the city is nevertheless primarily liable to those with whom it contracts to make them. Under the authority of the statutes, the City might have made a contract for the planting and maintaining of trees upon the streets and avenues of the City and to pay the contractor for the same out of the general fund, reimbursing itself later by a special assessment against the

1. City of second class may pay for shade trees by assessments.

abutting property. *City of Leavenworth v. Mills*, 6 Kan. 288 ; *City of Wyandotte v. Zeitz*, 21 id. 649 ; *City of Atchison v. Leu*, 48 id. 138 ; *City of Garden City v. Trigg*, 57 id. 632, 47 Pac. Rep. 524 ; *King v. City of Frankfort*, 2 Kan. App. 530.

The City and its officers alone are authorized to make and collect assessments, and where they fail and refuse to take the necessary steps to provide a fund for the payment of the same, the contractor must then look to the City for the contract price of his work or the value of his services. When the City repudiated the contract and refused to take the necessary steps to collect the fund for the payment of the contractor, he was entirely helpless and without any means of ever obtaining compensation for his work. It has been suggested that a proceeding might be brought against the officers to compel them to take the steps required under the contract, the ordinance and the statutes ; but there being so many steps to be taken at different times by different officers the remedy is wholly inappropriate and inadequate. If the city officers had examined the trees, issued warrants for

**2. City refusing to make assessments, liable generally.** the amounts due the contractor, and levied assessments against the improved property to meet the warrants, no general liability would have attached ; but, under the authorities, their failure and refusal to take these steps and their final repudiation of the contract, subject the City to a general liability, and the plaintiff was, therefore, entitled to maintain the action which he brought. In addition to the authorities already cited, see *City of Leavenworth v. Stille*, 13 Kan. 539 ; *City of Atchison v. Byrnes*, 22 id. 65 ; *Fisher v. City of St. Louis*, 44 Mo. 482 ; *City of Louisville v. Leatherman* (Ky.), 35 S. W. Rep. 625 ; *Paving Co. v. City of Harrisburg*, 64 Fed. Rep. 283 ; *Manufacturing Co. v. City of East Portland*, 14 Ore. 3 ; *Dist. of Columbia v.*

*Lyon*, 161 U. S. 200; *Paving Co. v. City of Denver*, 72 Fed. Rep. 336.

The extent of the liability of the City cannot now be determined, but as plaintiff alleged a compliance with the provisions of the contract, we think enough was alleged to show that the City was liable for some amount; and therefore the judgment of the District Court will be reversed and the cause remanded for another trial.