THE CITY OF ATCHISON V. L. FRIEND. ·

No. 15,064. (96 Pac. 348.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Special Assessments for Improvements—Foreclosure of Tax Lien—Liability to Contractor for Proceeds of Tax Sale.* Where special assessments were levied in 1886 upon abutting property to pay for the improvement of a street in a city of the first class, for which special-assessment bonds were issued by the city and were not paid when due, but remained delinquent for a number of years, and where a suit for the foreclosure of the tax liens against the property was brought under chapter 392 of the Laws of 1901 (Gen. Stat. 1901, §§ 7718-7724), under which the liens were foreclosed, the property sold, and the proportion of the proceeds of the sale paid over to the city treasurer, and where the city, upon demand, refused to pay such proceeds to the contractor, an action therefor against the city may be maintained.

2. ——— *Compromise of Delinquent Taxes by Request of the City—Liability to Contractor for the Amount of the Special Tax.* After the special assessments, regularly made upon several lots to pay for the street improvement, and the special-assessment bonds issued by the city had been in default for a period of years the mayor and council of the city passed a resolution requesting the board of county commissioners to authorize the redemption of the lots upon the payment of a small sum and the erection of a certain building on the property. The board acted upon the request and ordered the re-' demption of the lots substantially on the conditions named in

the resolution. In an action against the city to recover the amount of the assessments it is held that, as the board of county commissioners was vested with the power to order a compromise and redemption for such an amount as it deemed best, and as the board was not bound to heed the advice or request of the city officers, the action of the city officers in passing the resolution requesting the redemption did not affect the power or action of the board nor make the city liable to the contractor for the special assessments.

3. —————— *Purchase by the City of Lots Subject to Special Tax— Liability to Bondholders.* Where the city purchased several of the lots which had been assessed for the improvement, to be used in connection with its fire department, and thereafter appropriated them to that public use, thus making it impossible to enforce the tax liens arising upon the special assessments and the special-assessment bonds issued by the city, it became absolutely liable to the contractor for the amount of the assessment bonds.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed May 9, 1908. Modified.

*Henry Elliston,* for plaintiff in error.
*H. M. Jackson,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by L. Friend against the city of Atchison to recover the amount due on special-assessment bonds issued by the city in compensation for the improvement of a certain city street. In October, 1885, John Early entered into a contract with the city of Atchison to macadamize a part of Commercial street, and in consideration for the improvement the city agreed to, and did, issue a series of special-assessment bonds. The improvement was satisfactorily made by the contractor and the city issued two bonds against each abutting lot, each bond being for one-half

of the amount charged against the lot.   The following
is a copy of the assessment bonds which were issued:

"$17.72                                      No. 2664.
               SPECIAL-ASSESSMENT BOND.
           The City of Atchison, State of Kansas.
                          AUGUST 30, A. D. 1886.
"*To the Treasurer of the City of Atchison:*

"Pay to John Early, or bearer, the sum of seventeen
and ⁷²⁄₁₀₀ dollars, only out of money in the treasury
collected for assessments made in the year 188— on
lot 20, in block 21, C. A., for macadam Com'l street
from Ninth to Tenth Sts.

"By order of the city council.
                   (Signed)      S. H. KELSEY, *Mayor.*
Attest:
   [SEAL]    T. B. GEROW, *City Clerk.*"

The bonds were duly transferred by the contractor
to the plaintiff, and in December, 1891, the latter
brought an action against the city to recover the amount
of the assessments due on 115 pieces of property be-
cause of the alleged failure and neglect of the city to
levy and collect the special assessments.   Subsequently,
and during the pendency of the action, a large number
of the special-assessment bonds were paid, but pay-
ment was not made on a number of them, and the action
as to these was continued from term to term.   Taxes
continued to accumulate on the lots liable for the unpaid
bonds until the passage, in 1901, of the act authorizing
the collection of delinquent taxes upon real estate by
judicial proceedings.   (Laws 1901, ch. 392; Gen. Stat.
1901, §§ 7718-7724.)   In foreclosure proceedings in
1902 the lots in question, excepting five in number, were
sold at a tax sale, and the city received from the pro-
ceeds of the sale an amount representing the proportion
which the special assessments bore to the whole taxes
against the properties.   The plaintiff amended his pe-
tition and asked for the recovery of the amount re-
ceived by the city as the result of the foreclosure sale
of the lots subject to the special assessment.   For this

amount the court awarded judgment on what has been designated as the first class of assessment bonds.

An assessment had been made for what is called the second class of bonds chargeable against three other lots. As to these it appears that in 1900 the mayor and council of the city adopted a resolution requesting the county commissioners to permit the redemption of the lots upon the payment of one dollar and the completion of a one-story brick structure thereon, as an inducement to the improvement of the property and to make it thereafter productive of a tax revenue. In compliance with the request of the city council the county commissioners ordered the redemption on the terms named, and the county clerk notified the county treasurer of the order of the board permitting a redemption, and in September, 1900, the lots were redeemed and the entry of the redemption placed on the tax-sale record.

A distinct claim is made as to what is designated as the third class of special-assessment bonds upon two other lots, which were acquired by the city from the owner of the fee title in 1902 for the purpose of locating thereon a branch of the city fire department. The city, through its mayor and council, by resolution notified the board of county commissioners that the lots had become the property of the city, and requested that board to remit all taxes against the lots and to instruct the county clerk not to place them on the tax-rolls. In compliance with this request the board of county commissioners remitted all unpaid taxes and directed the county clerk to strike the property from the assessment rolls, for the reason that the property belonged to the city and was not taxable. The county treasurer entered upon the record of tax sales opposite these lots the notation: "Canceled by order of the county board, June, 1902."

As to the liability of the city for the money paid upon the bonds of the first class there is little room for controversy. The improvements were made under a

3—78 KAN.

contract with the city. The contractor performed the work·and made the improvements to the satisfaction of the city. Under statutory authority the city issued special-assessment bonds to the contractor. (Laws 1881, ch. 37, §.38; Gen. Stat. 1901, § 762; Laws 1885, ch. 95, § 3; Gen. Stat. 1901, § 765.) These bonds became a charge upon the lots and pieces of ground abutting upon the improved street, and upon this property assessments were made by the city to pay the bonds. The obligations arising on the bonds and assessments are to the city, and not to the contractor who made the improvement. The lot-owners are never primarily or directly liable to the contractor. He has· no right to interpose in the tax proceedings by which assessments are levied and collected. If the city neglects or refuses to make the assessments and to perform the duties devolving upon it in levying and collecting these special taxes the contractor has no means of obtaining compensation from that source, and his remedy is a direct action against the city for the amount of the indebtedness. (*City of Leavenworth v. Mills, et al.*, 6 Kan. 288; *City of Wyandotte v. Zeitz*, 21 Kan. 649; *City of Atchison v. Byrnes*, 22 Kan. 65; *City of Atchison v. Leu*, 48 Kan. 138, 29 Pac. 467; *Heller v. City of Garden City*, 58 Kan. 263, 48 Pac. 841.) By the process of taxation, including the foreclosure, portions of the assessments made for the payment of the bonds in question were collected and paid over to the city treasurer, but the city refused to pay that money to the plaintiff. Funds obtained upon assessments, whether paid in the ordinary way or through judicial proceedings to enforce tax liens, go into the treasury of the city and not into the hands of the contractor or his assignee. As was said in, *City of Atchison v. Leu, supra:*

"The contractor is no better off after the city has made the assessment and the tax is paid over to the county treasurer than before this is done, if he can not look to the city for his pay, because he has no means by which he can get the money collected to pay his claim out of the county treasury." (Page 140.)

So it was held in that case that the law required the city to collect the tax and when collected to pay it to the contractor. The statute authorizing the foreclosure proceeding requires that the proceeds of the sale shall be applied to the payment of the tax liens charged against each piece of the lands sold. (Laws 1901, ch. 392, § 3; Gen. Stat. 1901, § 7720.) When the city refused payment of the funds derived from that source it made itself liable to the plaintiff, at least to the extent of the money received. None of the objections made to the payment of the funds resulting from the assessments which were collected through the regular agencies of the law appears to be substantial.

As to the liability of the city on the second class of bonds other questions arise. The assessments on the lots involved were made by the city and certified to the county officers for their action, but no attempt was made to forclose these tax liens. The assessments were not enforced because, under an order of the county commissioners, the lots were redeemed for the sum of one dollar. The theory upon which the city was held upon these special-assessment bonds was that it had prevented the enforcement of the liens and procured their cancelation and had thereby disabled itself to pay the bonds to the contractor. It is true that the mayor and council of the city did request the board of county commissioners to accept one dollar for the redemption of the lots, "upon the completion of a one-story brick structure upon the existing foundations thereon as an inducement to the improvement of the same so as to make the same hereafter productive of a tax revenue." In response to this resolution the county commissioners agreed to accept one dollar in full payment of the taxes due on the lots when the building mentioned should be erected, equipped and ready to operate as a factory. The following is the material part of the order:

"In compliance with the request of the city council of the city of Atchison, Kan., relative to their action of April 2, 1900, it is hereby agreed and ordered that this

Atchison v. Friend.

board will accept one ($1) dollar in full payment of all taxes due to date on lots [describing them] when the one-story brick building is erected on the foundation already there, and the necessary machinery and appliances are in position to do business as a factory."

It was decided by the county commissioners that the condition upon which the redemption was ordered had been complied with by the Baker-Vawter Company, and the county clerk then notified the county treasurer of the fact and that officer made an entry of the redemption of the lots on the tax-sale record. What was the effect of the request of the city officers and of the redemption authorized by the county commissioners? Did the action of the city render it liable to the contractor for the assessments charged against the lots? If it had refused to make an assessment or to put the taxing machinery in motion as the law provides it may do for the collection of special taxes for the lot-owners it would have become directly liable to the contractor, but in fact it did make the assessment and did certify its action to the county commissioners. That was the extent of the duties enjoined by law upon the city officers until the taxes had been collected and paid over to the city treasurer. It was the county commissioners who made the compromise and ordered the redemption of the lots. It is true that the city requested the board to order the redemption, but its action was no more than advisory. The county commissioners were not bound to heed the advice of the city officers, and the resolution of the mayor and council did not affect either the powers or the duties of that board. That tribunal was vested with authority to compromise the taxes and to order redemption with or without the consent of the city. (Gen. Stat. 1901, § 7672.) The amount for which the lots were redeemed was very small, it is true; but the statute provides that the county commissioners may permit redemption for any sum less than the legal taxes, as shall in their judgment be for the best interests of the public. There is no claim that the commis-

sioners acted in bad faith in the premises, and it may
be assumed that they deemed it to be for the .public
interest to accept the small sum and to have the prop-
erty placed upon the tax-roll at a valuation which would
make it produce considerable tax revenue. It may be
said that this will operate practically to deprive the con-
tractor of any compensation for the improvement made
opposite these lots, but he must be deemed to have en-
tered into the contract with a knowledge of the law au-
thorizing a compromise and to have assumed the risk
that the property improved might be redeemed at a
sum much less than the special tax charged against it.
Under this contract he was only entitled to demand
payment for the improvement when the assessments
made for that purpose had been assessed and collected
through the regular agencies of the law. One of the
exigencies of a contract of this character is that the
city, after doing its part and using the processes pro-
vided by law to collect assessments for the contractor,
may not be able to collect more than a small part of
the assessment. When the city had done all that was
required of it by the contract and by statute its liability
to the contractor was at an end.

There can be no question as· to the liability of the
city upon the third class of bonds. While the assess-
ment stood as a charge against the lots the city pur-
chased them for the use of its fire department and
placed the title to them in the name of the city. Since
that time the lots have been devoted to that public use.
In buying the lots and appropriating them to such use,·
as it had a right to do, the city necessarily assumed the
liens existing against them. Property owned exclu-
sively by a city is exempt from taxation or from forced
sale for taxes. When the city purchased this property
it tied the hands of the authorities so that they could not
collect the assessments or enforce the liens existing
against the lots. It practically disabled itself to carry
out the contract and to provide a fund for meeting the
assessments, and hence made itself liable for the

amount of the debt. A street in the city of Ottawa was macadamized in front of public ground used for a court-house, and a special assessment was levied against the property. It was held, upon a contest, that the property was subject to assessment for the improvement, but that on account of the use to which it was applied it could not be disposed of at forced sale to meet the special assessment. It was there said that in case the county refused to pay the special assessments "there is no impropriety, after the claim is disallowed, in permitting the district court, on appeal, to adjust the amount thereof. The judgment can then be paid as other judgments against the county." (*Comm'rs of Franklin Co. v. City of Ottawa,* 49 Kan. 747, 757, 31 Pac. 788, 33 Am. St. Rep. 396.)

If the city had obtained the lots for a public use by condemnation it would have been required to pay for them, including the interests or liens based on the assessments, and it can not escape liability therefor by purchasing the lots and placing them beyond the reach of the taxing officers. It is a general rule that a contracting party who voluntarily disables himself from carrying out a contract or who does that which prevents performance renders himself absolutely liable on the contract. (*Dill v. Pope,* 29 Kan. 289.) The city had, of course, the right to purchase the lots for public use, but when it did so, and thus made it impossible to collect the assessments against the property, it became absolutely liable for so much of the assessments as were charged against these lots.

The findings of the court must be sustained as to the liability of the city on the first and third classes of bonds, but the finding of liability on the second class of bonds must be set aside.

The cause will therefore be remanded, with directions to enter judgment against the city for the amounts named in the first and third conclusions of law. Judgment will be denied on the claim mentioned in the second conclusion of law.