## THE GRAND LODGE OF THE ORDER OF SONS OF HERMAN OF THE STATE OF MINNESOTA, Appellant, v. THE CITY OF WINNER, Respondent.

### (259 N. W. 278.)

**(File No. 7774. Opinion filed March 6, 1935.)**

*Thad L. Fuller,* of Aberdeen, and *Lawrence, Murphy, Fuller & Powers,* of Fargo, N. D., for Appellant.

*Sutherland & Payne,* of Pierre, and *Windsor Doherty,* of Winner, for Respondent. .

WARREN, P. J. This is an action for damages brought by the plaintiff, a fraternal organization, on an unpaid 6 per cent paving bond issued by the defendant city of Winner in 1922. Trial by jury was waived, and the case was heard upon a stipulation of facts. Judgment was rendered for the defendant city of Winner, and plaintiff has appealed.

The paving assessment was made in accordance with the statute, and the city of Winner issued bonds in exactly the amount of the paving assessment. It appears that the last eighteen bonds of the series, including the appellant's bond, could not be paid because of the failure of the property owners to pay their paving assessments.

It is appellant's main contention that the city is liable for damages because of the failure and neglect of the county treasurer to collect the special assessments as they became due.

The case before us is the same as to facts as the case of City of Winner, S. D., v. Kelley (C. C. A.) reported in 65 F. (2d) 955, 957, and deals with the same bond issue. Circuit Judge Woodrough, who wrote the opinion in that case, dealt with practically all of the questions presented in the appeal in the present case. In that opinion it was held that the city had done its duty in every way in connection with the assessment, and that it was not to be held liable because of the county treasurer's failure and neglect in collecting the delinquent assessments. The city auditor certified to the county auditor all the delinquent assessments, and he in turn was to certify these assessments to the county treasurer whose duty it was to advertise and offer for sale the parcels of land against which the assessments were imposed. In Judge Woodrough's opinion the question of levy and collection of special assessments is discussed as follows:

" * * * The theory of the appellee is that the city was responsible to him in damages because, in violation of his duty, the county treasurer failed to advertise and to offer for sale annually these lots on which an installment of the special assessment was delinquent, or, if he did so advertise and offer for sale in any year, the city was liable to the appellee in damages, because the county treasurer did not bid in the property for the benefit of the city, in the absence of other bidders. The appellee also contends that the county treasurer was the agent of the appellant city, and his failures in these matters were failures of the city.

"The statutory scheme for the levy and collection of these assessments contemplates that the city auditor shall annually certify to the county auditor all delinquent assessments, and that the county auditor shall then certify these assessments to the county treasurer, who is required to advertise and offer for sale the parcels of land against which the assessments are imposed. Sections 6400, 6401, 6402, 6785, 6786, 6797 of South Dakota, Rev. Code 1919."

From the stipulated facts it appears that there was no defect or irregularity in the proceedings of the defendant city whereby the public improvement was contracted for. The special assessment to pay therefor was made. The bonds were issued in lieu of spe-

cial assessment certificates, and, further, the delinquent installments of the special assessments were certified to the county auditor. The officers of the city therefore faithfully fulfilled all the requirements of the statutes. The appellant claims that there is a further obligation of the city and its officials, in that the county officers were the agents of the city in performing their statutory duties for the advertising and sale of the properties for the delinquent installments of the special assessments, and that the county officers having failed to carry out the mandates of the statute to advertise and sell the properties, the city is liable and must respond in damages, more particularly by reason of the negligence and default of the county treasurer.

From the record it appears that the city was acting under a special statutory power conferred upon it by section 6409 of the South Dakota Revised Code of 1919, as amended by Laws 1921, c. 319, § 1, and that the bonds were issued to pay the cost of the improvement. The action is not predicated on the bond to recover thereon for a breach of contract on the part of the city to pay the amount due thereon, nor is the action brought for the purpose of reaching any fund in the hands of the city which it has collected on the assessment and failed to pay over to the appellant as a bondholder. The appellant's cause of action narrows down to the theory that the county officers neglected to perform certain statutory duties, and that they were the agents of the respondent city and as such the city is liable for damages to the bondholders because the county officials neglected to perform their statutory duties.

Appellant contends that in the case of City of Winner, S. D., v. Kelley, supra, the court failed to decide the fact situation relating to the existence or nonexistence of agency between the city and county officials. While the briefs in that case are not before us, yet from the statement quoted above it is apparent that the question of agency was considered by the court and decided that the county treasurer was not the agent of the city.

An examination of the statutes conferring power upon the city to do certain things relating to improvements and assessments against property and property owners and the conferring of certain duties and powers upon the county officials relating thereto seems clear and concise to the effect that it was not the intention to create the relationship of agency between the two, but rather ex-

pressly defined the duties of each. Therefore, when the city and its officials had performed each and every duty of them required, and they are not here charged with a breach of duty, their obligations and duties to the bondholders ceased.

The failure and breach of duty cannot be charged in this instance against the city or its officials, and from the stipulation it is quite apparent that it is not the appellant's intention to charge the city with the breach, but rather that the city is responsible for the breach of duty of the county treasurer, and that the city is responsible for the county treasurer's negligence. From an examination of the statutes involved, namely, sections 6400 to 6409, both inclusive, of the 1919 S. D. Revised Code, and amendments thereto, we find that the duties of the city officials and the county officials are each specifically stated; that is, the city and its officers are required to perform certain duties; that thereafter it becomes the duty of the county officials to proceed with the collection of the assessments. Section 6401, as amended by Laws 1919, c. 269, § 1, specifically provides that no assessment shall be paid or received by the city or town treasurer after the same shall have been certified to the county auditor, but that all assessments so certified shall be paid to the county treasurer, and that the county treasurer shall issue the receipts therefor. Hence it is quite apparent that the Legislature imposed a duty upon each, that is, the city and its officials, to perform certain duties, and thereafter the county officials, or more particularly the county treasurer, to perform his duty. The Legislature seems to have provided the manner in which the assessments and collection thereof should be made, and there is nothing to indicate that there was an intention to impose a liability upon the city and its officials for any neglect of duty on the part of the county officials.

The question might be asked, and with propriety, what further duties could possibly be imposed upon the city than those set forth in the statute? What authority would the city have to collect such a special assessment other than through the channels provided by the statute in which the county treasurer alone could possibly make the collection after the certificates had been properly certified to the county treasurer? Under what possible power or provision could the city proceed further? The city authorities as officers had, in our opinion, taken all the steps authorized and per-

mitted by the statutes to collect the special assessment and could not do anything more. The officers had done everything that the statute authorized to enforce the collection of the special assessment, and more is not required. The city could not proceed further to enforce the payment of the assessment as it had only such powers as are given it by statute and in the absence of a statute empowering it to do so the city could not become the purchaser of lands to be sold for taxes due the municipality. In City of Winner, S. D., v. Kelley, supra, the court carefully considered this phase of the facts before it and said: "The bondholder contends that, as the county treasurer is required to proceed with the sales for the assessment liens 'as in the case of other tax sales,' he should have bought in the property, failing other bidders, for the city, pursuant to the provisions of sections 6794 and 6803 just quoted. While these statutes confer power on the county treasurer to bid in property in the name of the county, at a sale for taxes, no statute of South Dakota has been cited which either required or authorized the city to bid at such tax sales, or making any provision as to what should be done with the purchased property, if the city should acquire it. It is the general rule that a municipal corporation has no power to purchase real property for taxes unless it is authorized to do so by statute. 3 Cooley on Taxation (4th Ed.) § 1448; 44 Corp. Jur. 1358; 61 Corp. Jur. 1229, and cases cited."

That a city under our present laws is powerless to purchase at a sale of lands for taxes is so universally true that it does not need further citation of authorities.

We have carefully considered the authorities cited by the appellant, but are unable to find any of said cases squarely in point under the fact situation and under the law such as ours. Each case cited contains from one to several elements that are not involved in the issues of the case at bar. While it might be interesting to review a number of the authorities cited by appellant, yet it would not, in our opinion, add substantially to this decision.

Most of the authorities seem to hold that a city is liable only when it fails to make the special assessment or fails to employ the means provided by the statute for its collection. City of Leavenworth v. Stille, 13 Kan. 539; City of Atchison v. Byrnes, 22 Kan. 65; see, also, the case of Atchison v. Friend, 78 Kan. 30, 36, 96 P. 348, 351, in which the court after discussing the city's liability

said: "When the city had done all that was required of it by the contract and by statute, its liability to the contractor was at an end."

The plaintiff purchased the bonds with full knowledge of the powers vested in the city, and therefore knew that the city could only perform certain duties relating to the execution of the bonds and certification of the delinquent assessments into the hands of the county authorities; that thereafter the county would proceed to carry out its duties in the matter of enforcing payment and the collection of the bonds. City of Enid v. Warner-Quinlan Asphalt Co., 62 Okl. 139, 161 P. 1092; Oklahoma City v. Hoehler, 71 Okl. 65, 175 P. 198.

It is interesting to note that a change was made regarding the sale of property for delinquent special assessments which prior to 1905 was vested in the city treasurer. See chapter 49 of the Laws of 1905; chapter 269 of the Laws of 1919, amended section 6401 of the S. D. 1919 Revised Code, to read as follows: "No assessment shall be paid to or received by the City or Town Treasurer, after the same shall have been certified to the County Auditor." The foregoing conclusively show that the power to enforce the collection of special assessments was taken away from city officials and placed in the hands of county officers.

It has been asked, what remedies had the bondholders? That question is not now before us, and we do not feel justified to, at this time, decide as to what might be done.

It seems clear to us that no agency existed between the city and the county, and that there was no duty imposed upon the city to do anything further than it did do, and that there was no duty requiring that the city direct and command the treasurer to advertise and offer the property for sale each year, and to direct that the property be purchased at the different sales.

Finding no error in the findings, conclusions, and judgment appealed from, the judgment of the lower court is affirmed.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

CAMPBELL, J. (concurring specially). It is conceded in this case that the municipality is not liable upon the "special assessment bonds" as such, and that it took all proper and necessary

steps to levy and did levy a valid assessment upon real property for the purpose of creating a fund for the payment of the bonds.

The record shows also that in so far as the statute specifically imposes any duties upon the municipality or its officers looking toward the collection of such assessment, those duties were likewise duly performed. In addition to the duties imposed upon the municipal officers, the statute purports to impose certain duties upon the county treasurer with reference to the enforcement of this assessment, but I cannot discover that any authority or control over the county treasurer with reference to the acts required of him is in anywise vested in the municipality, either expressly or by implication. I do not believe that the statute or any principle of law makes the county treasurer a representative, agent, or agency of the municipality in this matter in any such sense as to render the municipality legally answerable for any damage which may result from his misfeasance or nonfeasance.

I concur, therefore, in the affirmance of the judgment appealed from.